**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

**Michael McShane** (to be admitted *pro hac vice*)
Email: mmcshane@audetlaw.com
**S. Clinton Woods** (to be admitted *pro hac vice*)
Email: cwoods@audetlaw.com
AUDET & PARTNERS, LLP
711 Van Ness, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

[Additional counsel listed on signature page]

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT TORCH, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>WINDSOR SURRY COMPANY, d/b/a WINDSORONE; WINDSOR WILLITS COMPANY, d/b/a WINDSOR MILL; and WINDSOR HOLDING COMPANY<br><br>       Defendants. | Case No. 3:17-cv-00918<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

{SSBLS Main Documents/8887/001/00653742-1 }
Page 1 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

## INTRODUCTION

1.      Plaintiff Robert Torch ("Plaintiff") brings this class action on behalf of himself and all others similarly situated, by and through the undersigned attorneys, against Defendants Windsor Surry Company, d/b/a WindsorONE ("Windsor Surry"), and Windsor Willits Company, d/b/a Windsor Mill ("Windsor Mill") and Windsor Holding Company (collectively "Defendants"), the manufacturer of the WindsorONE and WindsorONE+ Protected trim board products. Plaintiff alleges, upon personal knowledge as to himself and his own acts and experiences, and upon information and belief following the investigation of counsel as to all other matters, as follows.

2.      Defendants marketed and sold trim board with a 10-year warranty under the brand name of WindsorONE, which they advertised as being defect-free, suitable or indicated for exterior use, and more durable and superior in performance than competing products. In reality, however, the WindsorONE trim board prematurely deteriorates, rots, and decays, resulting in significant damage to property owners, including Plaintiff. Specifically, the WindsorONE trim board suffers from three common defects, each of which independently lead to wood rot: (1) a failure to use a rot-resistant wood, (2) a failure to use a preservative to deter wood rot, and (3) a failure to use a waterproof adhesive.

3.      Defendants sold the WindsorONE trim board at a premium price over other trim board materials because of their claim that WindsorONE trim board had superior durability and performance in exterior applications.

4.      Defendants have sold, directly or indirectly, millions of linear feet of WindsorONE trim board to property owners, builders, contractors, carpenters, subcontractors, and other building professionals, directly and through retailers, distributors, wholesalers, lumber yards, building supply stores, and other distributors, for installation in homes, commercial buildings, and other structures across the country, including in Oregon.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 2 -     **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

5.      Purchasers of WindsorONE trim board made their purchasing decisions based in part on, and in reliance upon, the representations, statements, and information presented by Defendants' website, marketing literature, advertisements, and warranties. In addition, the purchasing decisions were also made based in part on, and in reliance upon, the representations made by Defendants' authorized distributors, dealers, retailers, building supply stores, and lumber yards, all of whom sell WindsorONE trim board products.

6.      Defendants have knowingly and intentionally concealed, and failed to disclose, that—notwithstanding the statements and representations on their website, and in their brochures, advertisements, and warranties—their WindsorONE trim board routinely rots and decays far in advance of the expiration of the warranty, and before Plaintiff, class members, and the construction professionals would reasonably expect it to when exposed to routine and expected outdoor conditions. Indeed, the WindsorONE trim board has rotted and decayed and will continue to do so at a rate that clearly demonstrates that the product is not durable, resilient, and/or fit for its intended use as an exterior trim board, trim, and/or molding.

7.      Similarly, Defendants have knowingly and intentionally concealed, and failed to disclose, that they actually had no intention of providing the services set forth in their warranties.

8.      Defendants have known for decades that their untreated WindsorONE trim board is prone to rot and decay, and routinely does rot or decay, when installed to the exterior of a home, building, or other structure. In fact, Defendants have had notice of the deficiencies described herein and have been routinely notified by homeowners, contractors, builders, lumber yards, building supply stores, other trim board manufacturers, and others, that (1) the WindsorONE trim board, trim, and moldings installed outside rot and decay; (2) untreated Radiata Pine should not be used as wood for exterior trim board, trim, or moldings because it rots; (3) WindsorONE trim board, trim, or moldings, made from untreated Radiata Pine, are not

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

indicated for exterior use or application because the wood rots and decays; and (4) WindsorONE trim board, trim, or moldings, made from untreated Radiata Pine, should not be sold for exterior use or application because the wood rots and decays.

9.      Ignoring the complaints and concerns from customers, homeowners, builders, contractors, lumber yards, building supply stores, and others, Defendants failed to implement any changes or improvements to their trim board products or warranty procedures to remedy the defects associated with their products. Rather, Defendants continued to use untreated Radiata Pine in the manufacture of their trim board products.

10.     The following represents a small sampling of internet postings by WindsorONE contractors, builders, and installers, voicing their general frustrations with the defective trim board, Defendants' failure to accept responsibility, and Defendants' tendency to blame the failure of the trim board on installation and construction practices:

**Jackby (Jack's Construction, NH) (5/6/09):**

**Windsor One Rot Problem**

"I just used Windsor One pine trim on a recently built home and it is showing numerous areas of severe rot, has any body (sic) else experianced (sic) this?"

**Kent Whitten (5/7/09**):

**Re: Windsor One Rot Problem**

"If it's exterior, then it's no good. Pine is not a good choice for exterior. A year, maybe two I'm guessing and it's got blue rot. Once water gets in there, it's over."

**Jackby (5/7/09):**

**Re: Windsor One Rot Problem**

"House is in Massachusetts built about 1 ½ years ago, we used all correct building practices primed end cuts etc….but this stuff is really rotting like wev'e (sic) never seen on window casings, water tables, corner boards, now I have been speaking with other builders and hearing more problems….any body else?"

**Shyhook (5/7/09):**

**Re: Windsor One Rot Problem**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

"…I would suspect the new paint formulas because that water born crap offers little if no protection against the elements."

**Aframe (5/8/09):**

**Re: Windsor One Rot Problem**

"I looked (sic) a trim replacement job last week on a 6-7 year old addition. FJ corner boards, casing, rakes, don't know if it's W1 yet…."

**Jason Whipple (5/8/09):**

**Re: Windsor One Rot Problem**

"Even though the site says it can be installed outside, one of the reps agreed with Gary at the Katz roadshow that it shouldn't be used outside."

**Dubz (5/8/09):**

**Re: Windsor One Rot Problem**

"I've seen several places where it rotted out after 2-3 or 5-6 years. My own four year old, factory installed, fjp window casings are rotting.

I think it's due to the fact that today's engineered pine grows so fast. It has huge amounts of the softer, summer growth between the harder winter growth. Look at the growth rings on a piece of trim taken off a 50 year house compared to a cross section of windsor one.

I'll never put it on one of my clients places. It's amazing how many contractors still do."

**A W Smith (5/8/09):**

**Re: Windsor One Rot Problem**

"exactly dubz. If they grew this crap any faster you may as well call it spongewood squareboards. I think the tree farm/ lumber industry needs to step back and take a second look at the hybrid crap they are passing off as lumber. Maybe a class action will shake them up."

**Jackby (5/14/09):**

**Re: Windsor One Rot Problem**

"Yes, I think your (sic) exactly right about the fast growth wood. Ive (sic) used a lot of pine products and have seen rot over a few years etc…but I have never seen wood rot at such an accelerated rate as this Windsor crap. The sad thing is the local yards thought they were selling the best thing since sliced bread…therefore guys like me had a very high expectations for this lumber and it

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

turns out to be ten times worse than any thing we have seen before….I like the class action suit idea."

**Jason Whipple (5/18/09):**

**Re: Windsor One Rot Problem**

"Craig (President/CEO of Windsor Mill who responded to blog complaints),

Please tell me what species of wood you use for your Millwork, and where it comes from. I'll be glad to fill you in on why it shouldn't be used outside from there."

**Kent Whitten (5/21/09):**

**Re: Windsor One Rot Problem**

"I cannot sit idly by anymore.

Pine is absolutely the worst decision anyone can make for use as an exterior trim material. I don't care if it's WindsorOne and has the stamp of approval from 100 scientists. You will regret using it as a product.

Once water gets in…..and it will get in…..it turns to pulp.

You might as well rip strips of Advantech."

http://www.contractortalk.com/f11/windsor-one-rot-problem-58316/.

11.      The comments and frustration about the defective WindsorONE trim board did not go unnoticed by Defendants. Defendants' President and CEO, Craig Flynn, took up the gauntlet and defended his family's product. He responded as follows:

**Craig Flynn (5/14/09):**

**Re: Windsor One Rot Problem**

**Response to Framerman: "**Based on the performance of many wood products today, I can understand your frustration. However, WindsorONE is in fact manufactured specifically for use on the exterior of the home, of which the substrate has been pine for the last 15+ years. Our proven DuraPrime 3-coat primer system and proprietary exterior glue-system are two key components in the success of WindsorONE's exterior performance. And following 1-3 above, with all job-site cuts re-coated, will greatly increase the performance of ALL wood trim products, not just WindsorONE."

**Response to Skyhook: "**We agree that many 'water-borne' products provide little protection against the elements. However, our primer has been developed by our partner and is an exclusive paint to WindsorONE which is not a paint one

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

can buy retail. I would appreciate the opportunity to send you tests demonstrating its effectiveness, specifically as it relates to oil-based products.  You'll quickly see that our primer system performs superior to oil-based products over our pine substrate."

http://www.contractortalk.com/f11/windsor-one-rot-problem-58316/.

12.     After Craig Flynn came to the defense of the product and blamed the rotting on installation, contractors, builders, and carpenters, manufacturers of Eastern Pine trim board voiced their frustrations about the rotting of WindsorONE trim board and Defendants' representations that its trim board, which is manufactured out of untreated Radiata Pine, can be used for exterior applications. This is just a sampling of the postings:

**Jason Whipple to Craig Flynn (5/18/09):**

**Re: Windsor One Rot Problem**

"Craig,

Please tell me what species of wood you use for your Millwork, and where it comes from. I'll be glad to fill you in on why it shouldn't be used outside from there."

**Craig Flynn Responding to Jason Whipple (5/19/09):**
**Re: Windsor One Rot Problem**

"Jason: Thank you for your offer, however we work with wood scientists from US Forest Products Laboratory, Forintek, private organizations and a number of Universities around the world regarding the suitability of wood species for millwork."

**Jason Whipple to Craig Flynn (5/20/09):**

**Re: Windsor One Rot Problem**

"WOW, all that science and no one told you that pine is near the bottom of the list for exterior trim? ("Eek" emoji)"

**Kent Whitten (5/21/09):**

**Re: Windsor One Rot Problem**

"I cannot sit idly by anymore.

Pine is absolutely the worst decision anyone can make for use as an exterior trim material. I don't care if it's WindsorOne and has the same stamp of approval of 100 scientists. You will regret using it as a product.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 7 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

Once water gets in….and it will get in… it turns to pulp.

You might as well rip strips of Advantech."

**Jason Whipple (5/22/09):**

**Re: Windsor One Rot Problem**

"Frankly, I'd like to here (sic) what type of wood is used for exterior trim by Windsor. Is it different from the interior trim? It should be."

**Jason Whipple to Craig Flynn (5/22/09):**

**Re: Windsor One Rot Problem**

"I see you are with us tonight Craig Flynn; What defines the difference between interior and exterior trim at Windsor?"

**RichN (5/29/09):**

**Re: Windsor One Rot Problem**

"I'm fortunate to be busy doing high end customs and remodels. I recently was called to a multi-million dollar water front custom home that we built. This home has miles of Windsor One material. In all my days I have never seen a product fail like this one. This house was 3 years old when it first showed signs of rot. I don't mean just a little, every where! I immeditaley called Windsor. It took months to have someone come out and look. It was not even a representative from Windsor but a 'Water Intrusion Specialist' they hired. Gee- guess he said- 34 pages of the obvious! Everyones fault but theirs! We primed all cuts, caulked, flashed, bla bla bla!

I stand behind all products that we build, big and small! I will stand behind this one! I'm now forced to hire a water intrusion specialist, attorney, and bring on board the insurance companies I had over the last several years.

This product has be (sic) inspected by many; the home owners, other builders, various carpenter (sic) and they have all said the same thing; they have never seen a product fail this fast and to this degree!

I find it difficult to express my frustration regarding this product.

This should not be used and sold for out door (sic) use!

Please contact me to fight the sale of this product for outdoor use!
By the way, even the Windsor water intrusion specialist told me he would have not recommended using this product on the North side of the house- 'Are you friggin kidding me!!!'"

**WarriorWithWood (5/29/09):**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**Re: Windsor One Rot Problem**

"I smell a class action suit brewin'"

**Rbsremodeling (5/29/09):**

**Re: Windsor One Rot Problem**

"It only looks that way until Windsor one puts their lawyers up one of these guys azzes."

**Jackby (5/31/09):**

**Re: Windsor One Rot Problem**

"In reply to rbsremodeling;
They may have lawyers, but it seems like they also have a problem with the wood their selling us. I have never seen anything rot so fast, ever! If more contractors speak up, something could be done. I wonder how many of us just made the repairs without trying to make a claim? …."

**Alden Robbins (10/26/09):**

**Re: Windsor One Rot Problem**

"I just wanted to put in my two cents here. In the effort of full disclosure, I own an Eastern White Pine sawmill. My family has done the same thing for 5 generations. We harvest the trees and buy from local loggers, trees that have grown in the Maine climate and soils for an average of 100 years or so. While these are not 'old growth' by definition, they are certainly not plantation grown**.** I have not seen the rot issues with white pine trim that I have seen with radiata trim. It is grown at a much slower rate, in a harsh climate. I hate to see problems with fingerjointed imported wood impacting the reputation of wood trim in general, especially Eastern White Pine trim, grown, harvested, and manufactured right here in New England."

**Sweet Lou (11/17/09):**

**Re: Windsor One Rot Problem**

"there is more to the story….specific to the issue of 'rot' and 'decay' mentioned in this thread relating to the WindsorOne product, the specie in question is Radiata Pine. This plantation grown pine is an excellent specie for interior millwork, mouldings and boards. Unfortunately, untreated Radiata Pine is and has been used for exterior applications (trim – some siding profiles) for several years. But unlike Eastern White Pine, Redwood, and Cedar, it does not have the natural decay resistant properties so proven over time in these species. However, if properly **treated**, Radiata Pine is an excellent option for exterior trim applications. I would venture to say that the problems mentioned here with WindsorOne were on product (sic) that they have put into the marketplace

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

without treatment (they make and sell both a treated and untreated product). ….WindsorOne has had the best reputation in the marketplace for years and are now finding out that even the best primed Radiata Pine will rot if used outside. That is why they are now treating the product before priming. ….My point is…if properly treated, Radiata Pine is a great choice for exterior trim/siding applications…."

**Fabcon (5/9/10):**

**Re: Windsor One Rot Problem**

"TBF- thanks for the reply. When I started using W1 there was not an option of protected or unprotected, or at least everyone I spoke with at W1 didn't give me that option, but I was told I could use it outside. When I got on the W1 bandwagon I spoke with quite a few people at W1 and they were telling me how great it was & they never had any problems – I even helped them get it into my local lumberyard, passed along some contact info to other builders & local architects, etc. After I started having all the problems – inside & outside – no one wanted to hear from me. I sent them a sample of the rotted boards with date stamps from the factory on the back & no reply. Spoke with a local sales rep last year at the JLC show & told him all my rotting problems, he took my card & no call. I can't express how poorly W1 handled everything but the sale with me, their customer service was terrible. It seems to be an industry problem, salesman are your best friend to make the sale & have every excuse when something goes wrong. I knew better than to use PFJ outside, but the W1 looked great & they assured me it would perform great – shame on me for not trusting what I know. I will never use PFL outside again."

**Bob428 (10/7/10):**

**Re: Windsor One Rot Problem**

"I started using Windsor one pine when it first came out, stopped using it when every house I used it on rotted out in two years or less. I have a house right now I have to go back to remove the product and replace it. The reps for this company are deceitful liars. You have to fight tooth and nail with them to make good on this garbage product. The first time we had to call them out, the rep tried to tell me the back of the boards were printed with the words prime all cuts. I told him it didn't say that, after many conversations and finally a trip the cutomers home, when I ripped off a board and threw it at him, he fessed up. It wasn't until that time that they started to stamp the back of the pine with prime all cuts. That was in 2007. The bottom line is that there is not only the potential for rot, it would seem that there is (sic) type of chemical reaction with perhaps the glue that makes this stuff rot in a way I have never seen in my life. I have been in this trade for 38 years. When it rots and the rot goes undetected for a while, it rots through everything, sheathing and studs. It's time for a class action against Windsor Mill."

**Bob428 to Skyhook (10/9/10):**

**Re: Windsor One Rot Problem**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

"ShyHook:

Most of the lumber companies here in Mass stopped selling the product. But I will concede that not every piece rots out. For example, in some instances 2 out of 4 pieces of window trim will rot out and 2 will not. If you use it for any type of water table application, kiss it goodbye. The end result here is that a nice intended interior product was marketed as an exterior product. There is nothing wrong with the application process; as a matter of fact that is exactly what the reps say???"

http://www.contractortalk.com/f11/windsor-one-rot-problem-58316/.

13.     On or around October 14, 2010, Craig Flynn responded specifically to some of the comments made by Bob428, as follows:

**Craig Flynn to Bob428 (10/14/10):**

**Re: Windsor One Rot Problem**

"My name is Craig Flynn; I am President & CEO at Windsor Mill, a family owned manufacturing business for 38 years. I have previously posted on this thread, and addressed a number of potential reasons for damage due to rot on the exterior of buildings.

….

….

To clarify a few things:

- We have had 'paint your cuts' (in some form or another) on our products since 1996.
- Painting your cuts is not specific to WindsorONE, but that of all primed wood products, including recommendations from the Western Red Cedar Association, the US Forest Products Lab, and the Canadian Wood Council;
- There are no 'special' installation instructions for WindsorONE, only following best practices that have been recommended for the last 30+ years;
- There are no organics in our glues that would contribute to or cause decay."

http://www.contractortalk.com/f11/windsor-one-rot-problem-58316/.  However, Craig Flynn avoided the main issue raised on the blog – whether WindsorONE trim board, made from untreated Radiata Pine, is not suitable as exterior trim board because it rots and decays.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

14.     Defendants have also been informed by their authorized retailers or sellers of their WindsorONE trim board, such as Johnson Lumber Co, National Lumber, LaValley, and others, that they have received complaints and reports from their customers of WindsorONE trim board rotting at alarming rates. Representatives from Johnson Lumber Co., National Lumber, and LaValley also informed Defendants and Craig Flynn that they did not believe that the WindsorONE trim board was fit or suited for use as an exterior trim board. Due to the volume and magnitude of the rot claims, Defendants set up a claims protocol, separate and apart from its warranty claim process, which is handled by its agent, Norcon, for each of these suppliers to deal with current and future claims related to the decay and rot of the WindsorONE trim board.  As part of this claims process, Defendants agreed that the suppliers could supply replacement product for product that rotted regardless of how the product was installed.

15.     Notwithstanding the reports about the rotting of WindsorONE trim board and being told by the construction and forestry industry that untreated Radiata Pine should not be used as trim board for exterior applications, Defendants continued, and continue to this very day, to market and sell WindsorONE trim board for exterior applications.

16.     This class action seeks common law and statutory damages, declaratory relief, and other relief as a result of Defendants' willful, deliberate, wanton, and flagrant conduct in causing consumers' offices, homes, and other buildings to be in a dangerous, defective, unsafe, and unfit condition for habitation.

## PARTIES

17.     Plaintiff is a citizen and resident of Oregon and owns a primary residence in Portland, Oregon, in which WindsorONE trim board is installed.

18.     Defendant Windsor Willits Company is a California Corporation, headquartered in Cotati, California. At all times relevant, Windsor Willits Company was engaged in the design, manufacture, marketing, and sale of WindsorONE and WindsorONE+ Protected trim

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

board that has been installed on and in numerous offices, buildings, homes, and other structures throughout the United States.

19.     Defendant Windsor Surry Company is a Delaware Corporation, headquartered in Dendron, Virginia. At all times relevant, Windsor Surry Company was engaged in the design, manufacture, marketing, and sale of WindsorONE and WindsorONE+ Protected trim board that has been installed in numerous offices, buildings, homes, and other structures throughout the United States.

20.     Defendant Windsor Holding Company is a Nevada Corporation headquartered in Petaluma, California. At all times relevant, Windsor Holding Company was engaged in the design, manufacture, marketing, and sale of WindsorONE and WindsorONE+ Protected trim board that has been installed in numerous offices, buildings, homes, and other structures throughout the United States.

21.     Upon information and belief, customer complaints and warranty claims regarding WindsorONE and WindsorONE+ Protected trim board are processed in California at 7950 Redwood Drive, Suite 4, Cotati, CA 94931 or 661 Railroad Avenue, Willits, CA 95490.

22.     Upon information and belief, all marketing of WindsorONE and WindsorONE+ Protected trim board in the United States, including distribution of advertising, as well as marketing and promotional materials, has been managed by offices in California at 7950 Redwood Drive, Suite 4, Cotati, CA 94931.

## JURISDICTION AND VENUE

23.     Defendants conduct substantial business in this District, including, but not limited to, the marketing and sale of WindsorONE and WindsorONE+ Protected trim board. This Court has jurisdiction over Defendants because they have intentionally availed themselves to the markets and laws of the State of Oregon.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

24.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy in this class action exceeds $5,000,000.00, exclusive of interest and costs, and the vast majority of members of the class are citizens of states other than the state in which Defendants are incorporated and where Defendants' primary places of business are located.

25.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

### Defendants' Trim Board Products

26.    Windsor Mill was founded in 1972, and from its inception, Windsor Mill produced finger-jointed wood trim boards and moldings for installation on wood structures as trim, fascia, soffit, rake board, corner board, band board etc. Windsor Mill's predecessor company, founded by Raymond Flynn, used Redwood and Douglas Fir to manufacture its products, including trim board and moldings.

27.    In 1996, Windsor Mill began producing the WindsorONE line of pre-primed trim board products, which it still produces today. Windsor Mill markets and sells the pre-primed trim board for exterior application or use as fascia, soffit, rake board, corner board, band boards, and window and door trim/casing. Windsor Mill also markets and sells the same pre-primed trim board for interior applications.

28.    WindsorONE trim board is designed as a finger-jointed product, meaning that each board is made up of several shorter boards that are joined together using a finger joint and adhesive.

29.    WindsorONE trim board is manufactured or made out of Radiata Pine, which is imported from Australia, New Zealand, and South America, specifically Chile.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

30.     According to Windsor Mill's President and CEO, Craig Flynn, Windsor Mill took Radiata Pine trees from the Monterey Coast of California and planted them in South America.

31.     Defendants utilize an outer course cut of the juvenile Radiata Pine to manufacture their trim board products. In their marketing materials, Defendants claim that the outer course cut assures the dimensional stability of the product. The product's tagline was "Wood in its Prime."

32.     Defendants did not treat the Radiata Pine used to manufacture the WindsorONE trim boards with any wood preservative.

33.     All the trim boards are manufactured according to the same manufacturing process, standards, and quality controls. The trim board manufacturing process is pictured on WindsorONE's website, https://www.windsorone.com. As described by Craig Flynn, "the trim boards are manufactured by first cutting boards to remove knots and other wood imperfections, then finger-jointing and fastening together the resulting pieces with high grade waterproof glue. Lastly, the boards are triple primed (three coats) with exterior-grade primer paint, then shipped to distributors in plastic wrap…."

34.     The Radiata Pine imported by Defendants from Australia, New Zealand, and South America is plantation grown. As a result of being plantation grown, nearly all of the wood is sapwood with little heartwood.

35.     Radiata Pine sapwood has no rot resistance. Radiata Pine heartwood is rated as having slight or no rot resistance.

36.     Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants were aware or should have been aware that the Radiata Pine sapwood has no rot resistance and that its heartwood is rated as having slight or no rot resistance.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 15 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

37.    The sapwood of Radiata Pine is classified as perishable; its heartwood is classified as non-durable.

38.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants were aware or should have been aware that the sapwood of Radiata Pine is classified as perishable and that its heart wood is classified as non–durable.

39.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that other manufacturers and sellers of exterior trim board made from Radiata Pine in the United States, such as Fletcher LIFESPAN (LOSP), Bodyguard (LOSP), and Claymark Centurion (Tru-Core), were treating the Radiata Pine with Light Organic Solvent-Born Preservative (LOSP) and other wood preservatives such as Tru-Core.

40.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that manufacturers and sellers of exterior trim board made from Radiata Pine in Australia and New Zealand treated the Radiata Pine with Boron salts, Chromated Copper Arsenate (CCA), LOSP, Copper Azole, and other wood preservatives.

41.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that the building codes in New Zealand and Australia prohibit the use of untreated Radiata Pine for structural uses in home construction.

42.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that in Australia and New Zealand, Radiata Pine not treated with a wood preservative was not indicated for exterior use as trim, trim board, millwork, or moldings, but rather, was only indicated for interior applications.

43.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that in the United States, Radiata Pine had been

{SSBLS Main Documents/8887/001/00653742-1 }
Page 16 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

successfully treated with various types of wood preservatives and used in the wood construction industry for over forty years.

44.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that in the United States, wooden doors and window parts have been treated with wood preservatives since the 1930's.

45.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that the Window & Door Manufacturer's Association, also known as the WDMA, publishes Industry Standard 4 ("I.S.4") for Water Repellant Preservative Non- Pressure Treatment for Millwork, as well as a list of the specific preservatives it has certified, which meet the requirements of I.S.4.

46.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that the American Wood Protection Association, also known as the AWPA, publishes industry standards for preservatives and treated wood products, including non-pressure treated millwork. In this regard, the AWPA lists the preservatives available to treat the wood and specifies the preservative treatment level using a hazard scale or level.

47.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, Defendants knew or should have known that according to the AWPA, the service condition that applies to WindsorONE trim board is UC3A—Exterior Above Ground, Coated with Rapid Water Runoff. This classification is for wood and wood based materials used in exterior construction that are coated and not in contact with the ground. As defined by the AWPA, "Such products may be exposed to the full effects of weather, but are in vertical exterior walls or other types of construction that allows water to quickly drain from the surface." Examples are coated millwork, siding, and trim. As such, Defendants knew or should have known that Radiata Pine, which is not rot resistant, required preservative treatment to prevent it from decaying or

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

rotting when used in exterior applications, and what treatment process and preservative was prescribed by the AWPA.

48.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, it was widely known in the millwork industry and Defendants knew or should have known that it is possible to effectively treat Radiata Pine and other species of Pine with preservatives to help prevent the wood from rotting and/or decaying.

49.    Prior to and after the introduction of WindsorONE into the marketplace in 1996, it was feasible for Defendants to treat the Radiata Pine with a wood preservative such as Boron salts, CCA, LOSP, Copper Azole, or another widely known and effective wood preservative, before priming and ultimately selling their WindsorONE trim board products.

50.    In 2005, Defendants introduced to the marketplace a second line of trim boards manufactured out of Radiata Pine; however, the boards were injected with a borate protectant. Defendants introduced this line of products as a result of the claims, reports, and/or complaints regarding the rotting of their WindsorONE trim board products.

51.    In 2007, Defendants introduced to the marketplace and began manufacturing and selling a separate line of trim board products manufactured out of Radiata Pine; however, the Radiata Pine was treated with wood preservatives known as Tru-Core. This product was branded by Defendants as WindsorONE+ Protected ("WindsorONE+"). Defendants introduced this line of products as a result of the claims, reports, and/or complaints regarding the rotting of the WindsorONE trim board.

52.    Defendants rebranded the WindsorONE trim boards as WindsorONE Traditional.

53.    Defendants provide a 30-year warranty against rot and decay for the WindsorONE+ Protected trim board products but do not provide any warranty against rot and decay for the WindsorONE Traditional trim board products. Yet, Defendants market and represent that both products are indicated and suitable for exterior use.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 18 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

54.     The WindsorONE+ trim boards are manufactured from the Radiata Pine imported from Australia and New Zealand. This is the same Radiata Pine that Defendants used to manufacture the WindsorONE trim board, now branded as WindsorONE Traditional.

55.     Except for the wood preservative treatment process, the manufacturing process for WindsorONE+ is the same as the manufacturing process for WindsorONE, now branded as WindsorONE Traditional.

56.     With the exceptions that the Radiata Pine substrate of WindsorONE+ is treated with a preservative and has three coats of factory-applied primer rather than two, the WindsorONE Traditional and WindsorONE+ products are otherwise the same. The treatment of the Radiata Pine with a wood preservative is the only difference between the two trim board products. The WindsorONE+ trim board product is made with the same fiber (wood), the same finger-jointing, edge glue, and primer as the WindsorONE Traditional trim board product.

### Defendants' Representations About Their Trim Board in Their Advertising and Marketing Materials

57.     Defendants marketed, advertised, represented, and specified that the WindsorONE trim boards and moldings were suitable for exterior application on homes, buildings, and other wood structures.

58.     Defendants market WindsorONE trim board as free of defects. Defendants market and have marketed that their WindsorONE trim board "materials can provide you with the durability and long term performance you require in a finger joint trim board – free of defects and the potential callbacks they can cause."

59.     Further, Defendants market and have marketed that consumers should "Think of WindsorONE end and edge glued boards as turbo wood. Not only does it have all the great qualities of wood, but in addition, it benefits from structural stability, decreased cupping, warping or twisting, . . . and it's defect free."

{SSBLS Main Documents/8887/001/00653742-1 }
Page 19 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

60.    Defendants market and have marketed that their WindsorONE trim board's "joints are stronger than the wood itself, and waterproof." Defendants attribute this strength to the fact that their trim board exceeds Wet Use Classification, ASTM D5572-95, stating that, "WindsorONE exceeds the standards set by this test, and that's why our joints are stronger than the wood itself, and waterproof!"

61.    In addition, Defendants advertise, and have advertised in the past, that WindsorONE trim board is suitable for all interior and exterior application because of a "unique blend of adhesives, designed for our specific manufacturing processes and your specific end-use."

62.    Defendants specifically represent and have represented that WindsorONE trim board was suitable for exterior use in a variety of applications:



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

63.    In addition, Defendants also include in their marketing and/or product brochure a "Features and Benefits" list, which specifically states that WindsorONE is suitable for all exterior applications:

**Feature #7**
Windsor utilizes a unique blend of adhesives designed for our specific manufacturing processes and your specific end-use.

**WindsorONE™** is suitable for all interior and exterior applications. Our Proprietary Adhesive System (PAS) ensures exacting application of our Type 1 PVA glues. We warrant our glue lines.

**When choosing a substrate, be sure to specify WindsorONE. Factory finished WindsorONE material can provide you with the durability and long term performance you require in a fingerjoint trim board - free of defects and the potential callbacks they can cause.**

64.    Defendants advertise and have advertised in the past that WindsorONE trim board is manufactured utilizing raw materials, which make it stable and consistent. Defendants advertise that the wood used to manufacture WindsorONE trim board is superior to products that are manufactured utilizing Cedar or Redwood.

65.    Defendants represent and have represented that "Today's Redwood and Cedar products are harvested from second and third growth forests, resulting in minimal vertical grain availability and minimal clear all heart cuts. Most redwood is sapwood and mixed grain. As a result, **they possess no advantages over WindsorONE**, and their lack of uniformity leads to inconsistent performance."

66.    Defendants advertise and have advertised that WindsorONE trim board is superior to products that are manufactured utilizing #2 Pine, Spruce or Fir.

67.    Defendants advertise and have advertised that they have a proven performance record with WindsorONE trim board.

68.    Defendants represent and have represented that "Windsor Mill is a proven performer. Our record of performance with some of the largest material dealers and custom

{SSBLS Main Documents/8887/001/00653742-1 }
Page 21 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

homebuilders in the country is unsurpassed. Were it not for the continued development and improvement of our products, **strict adherence to our zero defects policy described below,** and top notch customer service, our business would not be growing at the exceptional rate that it continues to do. **The bottom line – we use the highest quality materials to produce the highest quality products."**

69.    Defendants state in their WindsorONE trim board warranty that "Windsor Mill guarantees WindsorONE's end and edge gluing for 10 years and its primer for 5 years."

70.    Defendants warrant that they "will replace, without charge, any WindsorONE product to be defective" within the time period set forth in their warranty.

71.    Defendants and their authorized agents and sales representatives have made and continue to make the above described assertions, statements, representations, and warranties with the intent and purpose of inducing contractors, builders, and consumers to buy WindsorONE trim board, now branded as WindsorONE Traditional, from Defendants, to install for exterior use or application on homes, apartments, office buildings, and other structures in the State of Oregon and throughout the United States.

72.    In marketing the WindsorONE+ Protected product, Defendants highlight and stress in "WindsorONE +PROTECTED FACTS: TOP 10 THINGS KURT "THE KILT" SAYS ABOUT +PROTECTED:," among other things, the following:

1.    PROTECTED TO THE CORE; FULL PENETRATION
      Because unlike the other guys, we're assuming you'll actually want to cut the material at some point.

2.    PROTECTED AGAINST ROT, INSECTS & MOLD

      Does not protect against your mother-in-law, hangovers, airport security, etc.

3.    DURABLE FOR EXTERIOR & SAFE FOR INTERIOR

      Gold Indoor Air Quality Rating, low VOC's & California Hippie Approved.

8.    THE CUT SURFACES ONLY NEED PRIMING

{SSBLS Main Documents/8887/001/00653742-1 }
Page 22 -  **CLASS ACTION ALLEGATION COMPLAINT**
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

No need to also apply special protection (we took care of that for you).

9.    BACKED BY A 30-YEAR LIMITED* WARRANTY

The "limitation" is you have to install it correctly (for an example, see note on http://www.windsorone.com/things-kurt-says.php)

73.    Each of the above five advantages that Defendants tout that WindsorONE+ Protected holds over WindsorONE Traditional refers to, exposes, and corrects the fundamental flaw inherent in the WindsorONE Traditional product, namely, that its Radiata Pine substrate possesses no natural rot resistance and is not treated with a wood preservative. By treating the Radiata Pine substrate of WindsorONE+ Protected with a wood preservative, Defendants are now imparting to it the rot resistance required for the trim to be durable over the long term when used as exterior trim on wood-frame houses designed, constructed, and maintained using standard construction practices throughout the United States. Because the entire volume of each piece of WindsorONE+ Protected is treated with a wood preservative, there is no rot-susceptible wood that can be exposed by site-cutting and fastening. Even if site-cuts made in WindsorONE+ Protected trim board are not re-primed, its preservative-treated Radiata Pine substrate will not rot within the 4 to 5 years typically experienced with the WindsorONE Traditional trim board product, as evidenced by WindsorONE+ Protected's 30-year warranty against rot and termites, and its claim that the treated trim boards can provide 50 plus years of service.

74.    Despite the fact that WindsorONE Traditional's Radiata Pine wood substrate is not treated with a wood preservative like the WindsorONE+ Protected trim boards, Defendants still represent and market WindsorONE Traditional as indicated and suitable for exterior use and application.

### Failure of the Trim Board Product

75.    Contrary to Defendants' representations, WindsorONE trim board has in fact proven to be unable to withstand normal weather conditions and has absorbed moisture and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

water at an extremely rapid rate resulting in rotting and decay of the wood and damage to surrounding property.

76.    Contrary to Defendants' representations regarding the quality of wood used to manufacture WindsorONE trim board, the trim board is manufactured utilizing low cost and low performance Radiata Pine. Instead of using a heartwood species of wood that is naturally rot resistant, such as Western Red Cedar, Redwood, Douglas-Fir, or Eastern White Pine, for example, Defendants manufactured WindsorONE trim board with Radiata Pine, which has no natural rot resistance.

77.    While it is not unheard of to use a wood species for exterior trim that is not naturally rot resistance, such products must be treated with an adequate preservative to eliminate the wood as a food source for fungi. Unfortunately, Defendants failed to treat the Radiata Pine they used to manufacture the WindsorONE trim board with any preservatives.

78.    Further, the adhesive used is non-waterproof and unsuitable for exterior use to glue small pieces of Radiata Pine into a long piece of trim board.

79.    Defendants claim they used a cross-linking polyvinyl acetate ("PVAc") that meets the ASTM D5572-95 industry standard.

80.    However, the D5572-95 standard does not confirm that an adhesive is waterproof—it only rates adhesives for water resistance. Water resistance is not sufficient for a product that is intended to be exposed to rain, snow, humidity, and freeze-thaw cycles. For year-round exterior applications, a manufacturer must use a waterproof adhesive that meets the requirements of the more rigorous ASTM D2559 standard for Adhesives for Bonded Structural Wood Products for Use Under Exterior Exposure Conditions.

81.    The inferior adhesive breaks down over time and allows water to penetrate the untreated and rot susceptible Radiata Pine.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

82.     As a direct result of Defendants' decision to use a non-waterproof adhesive and a species of wood that is not rot resistant, the WindsorONE trim board absorbs water over time and trim board installed on structures in the State of Oregon and throughout the United States has prematurely decayed, rotted, split, warped, and become discolored.

83.     The WindsorONE trim board product begins to prematurely rot well in advance of its life expectancy or service life, which Defendants warrant for 10 years. Because the product is often installed on high parts of homes that are not easily visible to the human eye, such as roof soffits and fascia, homeowners may not immediately identify the rotted areas.

84.     Over time, the rotted areas expand, ultimately requiring complete replacement of the trim board and costing homeowners and property owners tens of thousands of dollars in materials, labor, and disposal fees.

85.     Such premature decay, rotting, splitting, warping, and discoloration also damages the structure on which the trim board is installed, causing the underlying structure to rot, buckle, deteriorate, and experience water damage.

86.     The deterioration of Defendants' trim board exposes the areas of the home beneath it to the elements and allows moisture to enter the wall-system behind the trim board.

87.     This causes the rest of the home, including the interior, to deteriorate.

88.     The existence of Defendants' defective trim board on the structures of Plaintiff and Class members also decreases the value of those structures.

89.     Due to Defendants' use of a non-waterproof adhesive that is unfit for the intended application, a finger-jointed design, and a low-cost species of Pine, which is not rot resistant and not fit for its intended use, the trim board fails and the wood rots and decays well in advance of its life expectancy or service life, which Defendants warrant for 10 years. All owners of structures containing the trim board have been damaged by the installation of the trim

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

board on their structures and will continue to be damaged so long as the trim board remains installed on their structures.

### Defendants' Liability for Damages to Plaintiff and the Class

90.    Defendants are responsible and liable for, among other things, the costs of removing and replacing the trim board installed on Plaintiff's structure and on Class members' structures, as well as consequential property and other damages caused by the defective product.

91.    By their wrongful actions and course of conduct alleged herein, Defendants have acted deliberately, willfully, knowingly, wantonly, and with flagrant disregard of the safety of persons who might be harmed by their product.

92.    As a direct and proximate result of Defendants' acts and/or omissions as alleged herein, Plaintiff and Class members have sustained, are sustaining, and will sustain damages to their offices, homes, apartments, buildings, and other structures, as well as losses due to the necessity of removing and replacing the defective trim board installed on their structures.

93.    Had architects, contractors, builders, lumber yards, building supply stores, and other building and construction professionals been aware of the true defective nature of Defendants' trim board, and the fact that it was not fit for its intended use as exterior trim board, they would not have recommended and/or specified it for installation on the exterior of a home, condominium, apartment, building, or other structure. In addition, had Plaintiff and the Class members been aware of the true defective nature of Defendants' trim board and the fact that it was not fit for its intended use as exterior trim board, they would not have purchased the trim board, a home containing the defective trim board, or they would have purchased the trim board or their homes containing the defective trim board at reduced prices.

94.    Defendants' liability to Plaintiff and Class members is not limited by Defendants' express warranty. Defendants' limitation of remedies in its express warranty is unconscionable and void.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 26 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

95.    Plaintiff and many Class members were unaware of the limitation of remedies in Defendants' express warranty at the time they came to own their trim board. Plaintiff and many Class members purchased homes and other structures already containing trim board and did not see the limitations in Defendants' warranty prior to purchasing those structures. Moreover, many Class members had trim board purchased for them by contractors, builders, and architects, for installation, and did not see the terms of Defendants' warranty prior to making such purchases. Accordingly, the limitations that Defendants seek to impose are invalid.

96.    Further, many Class members, including Plaintiff, did not negotiate or bargain for the terms of Defendants' express warranty, but rather, had to accept it as drafted by Defendants. As the less powerful and less sophisticated party to the transactions with Defendants, Class members were not in a position to analyze or bargain for the terms of Defendants' express warranty and thus should not be held to its terms. The terms of the express warranty are disproportionate and one-sided. Members of the Class had no understanding of the rights Defendants' warranty required them to give up at the time they acquired their trim board.

97.    Defendants' unconscionable limitation of remedies for a product they knew to be defective was imposed on Plaintiff and Class members in bad faith.

98.    Defendants' express warranty fails of its essential purpose by limiting the remedies available to consumers and erecting several barriers to its enforcement. The trim board's defective design and manufacture requires it to be completely replaced at costs exceeding what Defendants have contracted to pay pursuant to their express warranty. Moreover, the express warranty requires that the defective trim board be replaced with the same defective trim board.

### Plaintiff's Experience with Defendants' Trim Board

99.    In 2011, Plaintiff purchased a home located at 4715 Southwest Hewett Boulevard, Portland, Oregon 97221.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

100.    The prior owners of the home, Dan and Kay Hall ("the Halls") added an addition ("Garden Room Addition") to the home. Work on the Garden Room Addition started in 2007 and was completed in 2008.

101.    Plaintiff's Garden Room Addition makes extensive use of Defendants' WindsorONE trim board product.

102.    The Halls hired Don Young ("Young") of Don Young and Associates, Inc. to build the Garden Room Addition.

103.    Young purchased the building materials for the Garden Room Addition, including the WindsorONE trim board, from Parr Lumber in Portland, Oregon.

104.    Young's representative at Parr Lumber, Craig Wilson ("Wilson") provided Young with marketing materials and product brochures for WindsorONE trim board products. Based on this information and the aforementioned representations, Young specified the WindsorONE trim board for the Garden Room Addition and relayed to the Halls what Wilson had told him, as well as the information he read in the WindsorONE marketing materials, product brochures, and product warranty.

105.    Young and his clients, the Halls, chose to purchase WindsorONE trim board based on the information Young received from Wilson and thereafter communicated to the Halls, which included the representations in the marketing materials and product brochures, including, among other things, that the trim board was a superior product suitable for exterior use. Young and the Halls also considered and relied on the product warranty when deciding to specify and purchase the WindsorONE trim board for the Garden Room Addition.

106.    Young purchased the WindsorONE trim board from Parr Lumber in Portland Oregon on the following dates: October 16, 2007; October 17, 2007; October 22, 2007; October 25, 2007; October 26, 2007; October 30, 2007; November 1, 2007; November 7, 2007;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

November 16, 2007; November 26, 2007; December 12, 2007; January 3, 2008; January 11, 2008; January 17, 2008; and February 19, 2008.

107.     A screenshot of the express product warranty posted on Defendants' website in October of 2007 stated as follows:



Home > Architect > Product Catalog > Warranty

**WindsorONE Warranty**

**Limited Warranty**:
Windsor Mill guarantees WindsorONE's end and edge-gluing for 10 years and its primer for 5 years. Windsor Mill will replace, without charge, any WindsorONE product that installed according to directions and fails to meet this warranty within that time. Such replacement is the exclusive remedy for breach of warranty, with no consequential or other damages recoverable.

**Warranty Disclaimer**:
Windsor Mill's guarantee is limited to the above Limited Warranty. In Windsor Mill's opinion, its statements about WindsorONE products on this website and in printed literature are believed to be accurate, but do not constitute separate warranties. There are no warranties, expressed or implied, including merchantability, beyond the above Limited Warranty.

**Products**

S4SSE

S1S2E

Specialty

Moldings

108.     At the time of the aforementioned purchases of WindsorONE trim board, Parr Lumber was not stocking or selling WindsorONE+ Protected, nor were Defendants selling WindsorONE+ Protected in the State of Oregon.

109.     The Garden Room Addition contains WindsorONE trim board installed as exterior trim, including but not limited to, installations as fascia, soffit, corner board, vertical boards, and band board.

110.     The Garden Room Addition also contains trim and moldings made of Hemlock and Fir, which were installed by Young at the same time he installed the WindsorONE trim board.

111.     Young installed the WindsorONE trim board products and the trim and moldings made out of Hemlock and Fir in accordance with standard construction practices in Portland, Oregon.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

112.    In 2011, when Plaintiff purchased his home from the Halls, despite his due diligence and inspection, he did not notice any issues with the WindsorONE trim board on the Garden Room Addition.

113.    In late 2014, Plaintiff was inspecting the Garden Room Addition roof and noticed that a fair amount of WindsorONE trim board on the decorative "boxes" on the north and south sides of the roof looked to be deteriorating. He noted that there were large splits, warping, and areas where fungus was growing out of the wood.

114.    In the spring of 2015, Plaintiff asked a general contractor to look at the trim board issues. While looking at the issues Plaintiff previously discovered, the general contractor showed Plaintiff additional areas where the wood was damaged. Those areas included the side columns of the Garden Room Addition and the outside baseboards. The columns were cracking down the middle and the baseboards were cracking, warping, and had fungus growing out of the wood.

115.    This discovery concerned Plaintiff and he subsequently contacted Young to conduct an inspection.

116.    Upon inspection, Young confirmed that he had used WindsorONE trim board on each of the areas that were deteriorating, decaying, and rotting, and offered to get in touch with WindsorONE to try and remedy the situation. Interestingly enough, Young's inspection also revealed that the trim and moldings made from Hemlock and Fir, which he had installed according to the same construction practices as the WindsorONE trim board, had not rotted.

117.    On or around September 2, 2015, Young spoke to Wilson, his representative at Parr Lumber, regarding the deteriorating and rotting trim board in an effort to get Defendants to pay for the repair and replacement of the rotting WindsorONE trim board, as well as damage to other parts of the home. Wilson informed Young that he would look into the process on how to

{SSBLS Main Documents/8887/001/00653742-1 }
Page 30 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

file a warranty claim and that other customers had contacted him about the WindsorONE trim board products failing, rotting, decaying, and deteriorating.

118.    Thereafter, on or around September 4, 2015, Young was contacted by Defendants' agent, Norcon Consulting Group (formerly known as Norcon Forestry Ltd.) (''Norcon''), regarding filing a warranty claim on behalf of Plaintiff. After Young spoke to Norcon's representative, Jennifer Taras, he received an email from her confirming that Norcon assists Windsor Mill with warranty claims, stating that Norcon initiated a WindsorONE claim for rotting trim installed on a home in southwest Portland, Oregon, and setting forth the materials for submission of a warranty claim.

119.    Norcon's role on behalf of Defendants in the warranty process is as follows: (1) contact claimants or their representatives (builder or contractor) and have them submit the necessary information as prescribed by Defendants for the warranty claim; (2) review the submitted information and determine if an inspection is necessary to evaluate the claim; (3) conduct the inspection (if necessary); (4) report their findings to Defendants and recommend whether to accept or deny the warranty claim; (5) interface or discuss with Defendants, including President and CEO, Craig Flynn, whether to accept or deny the warranty claim or offer a settlement to the claimant outside of the warranty; and (6) inform the claimant or their representative of Defendants' warranty determination and offer a settlement outside of the warranty.

120.    Within the terms of the applicable express warranty, Young, on behalf of Plaintiff, submitted a warranty claim to Norcon with all the requisite information in September 2015.

121.    As part of its investigation, Norcon inspected the property on October 20, 2015. The inspection was conducted by Matthew Jesson.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 31 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

122.    In early November 2015, Defendants, through Norcon, informed Plaintiff that the inspection revealed that the primary cause of Plaintiff's damage was wood decay and the "products [do] not carry a warranty that covers decay." Defendants also stated, "there [were] certain aspects of the installation that [did] not comply with the WindsorONE installation instruction or recommendations by various wood product Associations and other manufacturers."

123.    In an email to Mr. Torch, Norcon states, *"I do not want to discredit the impressive level of detail that went into the installation of the* [trim] *features on your home…however…there are certain aspects of the installation that do not comply with the WindsorONE Installation Instructions…"* Norcon does not explain how the builder failed to comply with the installation instructions. Norcon states, *"In an environment such as your deck, drying potential of exterior wood products is limited which increases the likelihood that any untreated wood product* [such as WindsorONE] *will rot…"* and *"Decay can only be prevented through drainage and drying of the untreated wood product as all wood will rot under conditions with adequate temperature and moisture content."* Norcon does not explain why the decades-old wood siding and trim on the original house, which was subjected to the same weather/climate conditions as the WindsorONE trim (but for decades longer), has not rotted. Nor does Norcon explain why a painted pergola made of untreated Douglas-Fir—built off-site but installed at the same time as the WindsorONE trim—has not rotted. Norcon does not explain why the ornamental balusters—made from an unknown wood—in the guard rail around the rooftop deck between the rotting WindsorONE-clad pedestals have not rotted. The WindsorONE trim board rotted before the 5-year warranty on its factory-primer and the 10-year warranty on its glue joints elapsed. As it has routinely done when settling claims for rotting non-preservative-treated WindsorONE trim board used as exterior trim, Windsor Mill, through

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Norcon, offered Mr. Torch preservative-treated WindsorONE+ Protected trim board as replacement material.

124.    Defendants made Plaintiff a settlement offer in the form of a material credit for 2,004 linear feet of WindsorONE+ Protected trim board. This unreasonable offer did not even cover the cost of the damaged trim board.

125.    The Torch sunroom, trellis, and entrances installed by Young in 2007 are well above industry standards and represent best practices. Mitered ends of WindsorONE were joined with biscuits and glued. Additionally, sealant was applied to the juncture of the trim boards and metal cap flashing installed on the tops of the columns. Despite this high level of workmanship, the WindsorONE trim board failed.

126.    The trim board installed on Plaintiff's structure is failing, rotting, and decaying, despite being installed well above standard construction practices in Portland, Oregon.

127.    The failing trim board on Plaintiff's structure has resulted in damages not only to the trim board itself, but also to the structure on which the trim board is installed. The structure has sustained significant water damage and various portions of the structure are rotting as a result of the defective trim board installed on Plaintiff's structure.

128.    Removing all the damaged trim board will also require custom moldings and additional custom built elements to be removed from Plaintiff's structure.

129.    At present, the fascia trim on Plaintiff's structure has exhibited significant swelling and rotting as a result of the defective production of the trim board including, but not limited to, the failure of the end and edge gluing as well as the primer failures.

130.    There is also significant swelling and rotting to the vertical boards on Plaintiff's structure.

131.    The soffits, corner boards, and band boards on Plaintiff's structure, as well as other trim located on Plaintiff's structure, have also exhibited damage.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

132.    As demonstrated in the photographs below, the trim board installed on Plaintiff's structure has deteriorated, rotted, and decayed to an alarming degree:



{SSBLS Main Documents/8887/001/00653742-1 }
Page 34 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840





{SSBLS Main Documents/8887/001/00653742-1 }
Page 35 -  **CLASS ACTION ALLEGATION COMPLAINT**



133.    The damages to Plaintiff's structure will cost more than $30,000 to remediate, based on estimates given to Plaintiff.

134.    Defendants have failed to resolve Plaintiff's warranty claim as provided in their warranty and as required by the laws of the State of Oregon.

## <u>CLASS ACTION ALLEGATIONS</u>

135.    Plaintiff Robert Torch seeks to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated. The proposed Class ("the Class") is defined as:

All persons and entities in the State of Oregon who own or owned homes, apartments, office buildings, or other structures in which WindsorONE trim board is or was installed on the exterior

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**Numerosity**

136.    The use of Defendants' WindsorONE trim board has damaged and continues to damage a vast number of persons and entities in the State of Oregon that own offices, homes, apartments, buildings, and other structures, in which the trim board has been installed. The members of the Class are so numerous that joinder of all members is impracticable.

137.    The exact number of Class members is unknown as such information is in the exclusive control of Defendants. However, given the widespread use of WindsorONE trim board in the State of Oregon, and the size and reach of Defendants' operations, Plaintiff believes the Class consists of hundreds of consumers statewide, making joinder of Class members impracticable.

**Commonality and Predominance**

138.    The claims of Plaintiff and Class members rely upon common questions of law and fact. Plaintiff and Class members are also entitled to a common form of relief, namely damages.

139.    The harm that WindsorONE trim board has caused, is causing, and will cause, is substantially uniform with respect to all Class members. Common questions of law and fact affecting the Class members include, but are not limited to, the following:

a.    Whether Defendants' WindsorONE trim board is defective;

b.    Whether the trim board has not or will perform in accordance with the reasonable expectations of ordinary consumers;

c.    Whether Defendants knew or should have known of the defective nature of their trim board before placing it into the stream of commerce for purchase by Plaintiff and the Class;

d.    Whether Defendants concealed from consumers and/or failed to disclose to consumers the defect;

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

e.      Whether Defendants have failed to prevent damages caused by the defective product they designed, manufactured, and sold into the stream of commerce;

f.      Whether Defendants have failed to warn consumers about the reasonably foreseeable dangers of using their trim board;

g.      Whether Defendants have breached an express warranty;

h.      Whether Defendants acted negligently;

i.      Whether Defendants have breached an implied warranty of merchantability;

j.      Whether Defendants have breached an implied warranty of fitness for particular purpose;

k.      Whether any purported limitations on recovery under Defendants' express warranty were unconscionable;

l.      Whether Defendants' express warranty failed of its essential purpose;

m.      Whether Defendants' trim board is fit or suitable for its intended purpose as exterior trim board;

n.      Whether Defendants concealed from consumers and/or failed to disclose to consumers that their trim board was not fit for its intended purpose as exterior trim board;

o.      Whether Defendants' conduct should be enjoined; and

p.      Whether the members of the Class have sustained damages and, if so, the proper measure of such damages.

140.    These common questions of law and fact predominate over any individual questions that may exist or arise.

## Typicality

141.    Plaintiff's claims are typical of the claims of the Class members. All claims arise from the same factual background and legal theories. Plaintiff and all Class members sustained damages arising out of Defendants' wrongful course of conduct. The harms suffered by Plaintiff

{SSBLS Main Documents/8887/001/00653742-1 }
Page 38 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

are typical of the harms suffered by the members of the Class, and Plaintiff and other Class members have an interest in preventing Defendants from engaging in such activity in the future.

### Adequacy of Representation

142.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel competent and experienced in class action and product liability litigation and has no conflict of interest with other Class members in the maintenance of this class action. Plaintiff has no relationship with Defendants except as a consumer who purchased a home that incorporated Defendants' products. Plaintiff will vigorously pursue the claims of the Class.

### Superiority

143.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class to individually seek redress for the wrongs they have experienced. Plaintiff believes that Class members, to the extent they are aware of their rights against Defendants herein, would be unable to secure counsel to litigate their claims on an individual basis because of the relatively small nature of the individual damages, and that a class action is the only feasible means of recovery for the Class members. Individual actions would also present a substantial risk of inconsistent decisions, even though each Class member has an identical claim of right against Defendants.

### Manageability

144.    Plaintiff envisions no difficulty in the management of this action as a class action. The advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result from a multitude of separate adjudications of these

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

issues for each member of the Class or the injustice that would result if individual actions could not be brought due to lack of notice or resources.

145.    Class treatment further ensures uniformity and consistency in results and will provide optimum compensation to members of the Class for their injuries.

## EQUITABLE TOLLING AND ESTOPPEL OF STATUTES OF LIMITATION

146.    Despite knowing that their trim board was defective, Defendants concealed the defective nature from Plaintiff and the Class by affirmatively marketing and advertising their trim board as being proper for exterior use as building trim. Defendants also failed to apprise consumers of the trim board's inability to withstand normal conditions and its excessive absorption of moisture.

147.    Plaintiff and Class members did not and could not have known that their trim board was made with improper materials that would cause it to prematurely rot and deteriorate, as this fact was not disclosed to them and was not apparent from a superficial inspection of Defendants' trim board.

148.    Plaintiff and Class members could not have discovered the defective nature of Defendants' trim board through the exercise of due diligence.

149.    Due to Defendants' fraudulent concealment of the defects associated with its trim board, Defendants are estopped from asserting statute of limitations defenses to any of the claims alleged herein.

## FIRST CLAIM FOR RELIEF

### Strict Products Liability

150.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

151.    The WindsorONE trim board products manufactured and sold by Defendants were defective, as set forth herein, at the time they were purchased and installed in Plaintiff's

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

and Class members' structures. The trim board products were intended to and did reach Plaintiff and Class members without substantial change from the condition in which they were manufactured and sold.

152.    The WindsorONE trim board products were and are defective as a consequence of design flaws. As a consequence of its design flaws, the WindsorONE trim board is and was unreasonably dangerous to the structures in which it was installed because it prematurely rots and deteriorates. This premature rot and deterioration causes the trim board to fail to perform as intended and as warranted, and such failures, rot, and deterioration have led, and will continue to lead, to water intrusion and other related damages to Plaintiff's and Class members' structures.

153.    The WindsorONE trim board products were and are dangerous to an extent beyond that which would be contemplated and expected by the ordinary consumer purchasing such products with the ordinary knowledge common to the community as to its characteristics.

154.    It was foreseeable, expected, and intended that the WindsorONE trim board products would be installed in and to the exterior of Plaintiff's and Class members' structures and that the trim board would be used for its intended purpose.

155.    Defendants' defective WindsorONE trim board products were the foreseeable and proximate cause of extensive property damage to Plaintiff's and Class members' structures. As such, Plaintiff and Class members seek damages for the cost of replacing their defective WindsorONE trim board with replacement trim board that will function properly as exterior trim board, as well as any consequential and incidental damages arising therefrom.

156.    Plaintiff and Class members have sustained, are sustaining, and will sustain damages and losses as alleged herein.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 41 -   **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## SECOND CLAIM FOR RELIEF

### Negligence

157.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

158.    Defendants designed, manufactured, marketed, and sold the WindsorONE trim board products that were installed in and to the exterior of Plaintiff's and Class members' structures.

159.    Defendants owed Plaintiff and Class members, as foreseeable future plaintiffs, a duty to use reasonable care to design, develop, test, manufacture, distribute, market, and sell a non-defective trim board product.

160.    Defendants also owed Plaintiff and Class members a duty of care to warn them of the defects associated with their WindsorONE trim board products.

161.    Defendants breached their duty of care by negligently selecting materials for designing, developing, testing, distributing, marketing, and selling the defective WindsorONE trim board products. Upon information and belief, all of the forgoing took place in the State of Oregon.

162.    Defendants also breached their duty of care by negligently failing to warn architects, consumers, contractors, carpenters, and retailers that their WindsorONE trim board products were defective and would fail and cause damages.

163.    Defendants were aware, or reasonably should have been aware, that their WindsorONE trim board was defective.

164.    When purchasing Defendants' WindsorONE trim board and/or structures clad with the WindsorONE trim board, Plaintiff, Class members, and/or their contractors and architects were unaware of the WindsorONE trim board's defective nature.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

165.    It was foreseeable that Defendants' WindsorONE trim board would be installed in and to the exterior of Plaintiff's and Class members' structures, that the trim board would deteriorate and fail, and that Plaintiff and Class members would therefore be injured by the resulting water intrusion and property damage.

166.    The failing WindsorONE trim board on Plaintiff's structure has resulted in damages not only to the WindsorONE trim board itself, but also to the structure on which the WindsorONE trim board is installed. The structure has sustained significant water damage and various portions of the structure are rotting as a result of the defective WindsorONE trim board installed on Plaintiff's structure.

167.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class members have sustained, are sustaining, and will sustain damages and losses as alleged herein.

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

168.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

169.    Defendants designed, developed, tested, manufactured, distributed, marketed, and sold WindsorONE trim board for purposes of its eventual sale to end users and installation in offices, homes, apartments, buildings, and other structures.

170.    Further, Defendants made the previously described express affirmations, statements, assertions, and representations concerning their WindsorONE trim board's durability, quality, and ability to be used as an exterior trim product, in its marketing and advertising materials, in order to induce consumers, including Class members and/or their contractors and architects, to purchase their trim board. Such affirmations constitute express warranties pursuant to ORS 72.3150.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

171.    Defendants made the following affirmations of fact, descriptions, and promises regarding their WindsorONE trim board, to Class members and their contractors and architects, in marketing materials made available to consumers such as Class members and/or their contractors and architects:

- o   Windsor Mill uses the highest quality materials to produce the highest quality products.

- o   No special precautions are necessary when working with WindsorONE versus composite trim boards.

- o   That WindsorONE is superior to wood and should be thought of "as turbo wood."

- o   WindsorONE has "all the great qualities of wood, but in addition, it benefits from increased structural stability, decreased cupping, warping, or twisting …."

- o   WindsorONE "joints are stronger than the wood itself, and waterproof."

- o   WindsorONE is superior to #2 Pine, Spruce, or Fir, primed or unprimed.

- o   Redwood and Cedar products "possess no advantage over WindsorONE, and in [sic] in fact are inferior [to WindsorONE] when it comes to performance."

- o   "WindsorONE is suitable for all interior and exterior applications."

- o   WindsorONE provides "durability and long term performance …."

172.    Plaintiff and Class members, and/or their contractors and architects, relied on Defendants' representations regarding the durability and quality of their WindsorONE trim board and its suitability for use as an exterior trim product, as well as the existence of Defendants' warranty.

173.    Plaintiff and Class members, and/or their contractors and architects, also relied on Defendants' representations regarding the durability and quality of their WindsorONE trim board and its suitability for use as an exterior trim product, as well as the existence of Defendants' warranty.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

174. Defendants' affirmations became the basis of the bargain when Plaintiff and Class members, and/or their contractors and architects, purchased the WindsorONE trim board for offices, homes, apartments, buildings, or other structures containing the trim board.

175. Defendants' WindsorONE trim board failed to comport with the affirmations, statements, assertions, and representations made by Defendants and instead decayed and rotted prematurely and proved itself unfit for many of its recommended exterior trim applications.

176. Defendants were aware of the true nature of the trim board at the time that the trim board was sold to Plaintiff and Class members.

177. But for Defendants' conduct alleged herein, and their breach of express warranty, Plaintiff and Class members would not have suffered the damages and losses alleged herein.

178. Defendants breached their express warranty by failing to provide trim board that was suitable for use as an exterior trim board, fascia board, edge board, soffit board, or cladding. Defendants further breached their 10-year express warranty by denying warranty claims based on improper installation when, in fact, no method of installation would avoid the inherent problem with Defendants' trim board.

179. As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class members have sustained, are sustaining, and will sustain damages and losses as alleged herein.

180. Plaintiff and Class members have been damaged by Defendants' breach of express warranty, having unknowingly purchased a product that deteriorates prematurely and fails to perform as Defendants promised. Plaintiff and Class members have incurred, or will be forced to incur, unanticipated expenses associated with replacing Defendants' product, along with sustaining consequential damages caused by Defendants' trim board.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## FOURTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Merchantability

### (ORS 72.3140)

181.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

182.    Defendants manufactured WindsorONE trim board products and sold the trim board products as retail consumer goods in Oregon.

183.    Defendants designed, developed, tested, manufactured, distributed, marketed, and sold WindsorONE trim board for purposes of its eventual sale to end users and installation in offices, homes, apartments, buildings, and other structures.

184.    Defendants are merchants of building materials, including building trim board.

185.    Defendants impliedly warranted pursuant to ORS 72.3140 that their trim board passed without objection in the trade and was fit for the ordinary purposes for which it is used—fascia, soffits, corner board, window trim, door trim, and any other exterior trim application. Specifically, Plaintiff and his contractor and/or architect relied upon Defendants' representations alleged above as the basis for the purchase of Defendants' WindsorONE trim board.

186.    Defendants knew and/or should have known that their WindsorONE trim board was not of acceptable quality given that it was designed and manufactured with a sub-standard adhesive, which rendered it unable to resist moisture as it was intended to do.

187.    Defendants knew and/or should have known that their WindsorONE trim board was not generally fit for the ordinary purposes for which it was intended to be used and did not pass without objection in the trade, as it was manufactured with sub-standard materials that Defendants should have known would cause it to fail.

188.    Defendants' WindsorONE trim board was not merchantable at the time of sale given that it was constructed with a non-waterproof adhesive and a non-decay resistant species

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

of low quality wood, which prevented it from being able to serve its ordinary purpose and from passing without objection in the trade.

189.    Defendants knew and/or should have known that their WindsorONE trim board would reach the end user without substantial change and in the condition in which it was sold.

190.    Defendants' WindsorONE trim board has failed in its ordinary and intended use as an exterior trim product, given that it cannot withstand normal weather conditions and absorbs water and moisture, which cause it to prematurely deteriorate, rot, and decay.

191.    Defendants' WindsorONE trim board has failed to pass without objection in the trade and is not of comparable quality to other exterior trim products in its line of trade. Unlike other trim products, Defendants' WindsorONE trim board has absorbed water at an alarming rate, resulting in premature decay, rotting, splitting, warping, and discoloration.

192.    But for Defendants' conduct alleged herein, and their breach of the warranty of merchantability accompanying their WindsorONE trim board, Plaintiff and Class members would not have suffered the damages they have sustained to their structures, or related damages, as alleged herein.

193.    As a direct and proximate result of Defendants' breach of warranty of merchantability, Plaintiff and Class members have sustained, are sustaining, and will sustain damages to their structures, as well as related damages, as alleged herein.

## FIFTH CLAIM FOR RELIEF

### Breach of Implied Warranty of Fitness for Particular Purpose

### (ORS 72.3150)

194.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

195.    Defendants manufactured WindsorONE trim board products and sold the trim board products as retail consumer goods in Oregon.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

196.    Defendants designed, developed, tested, manufactured, distributed, marketed, and sold WindsorONE trim board for purposes of its eventual sale to end users and installation in offices, homes, apartments, buildings, and other structures.

197.    Defendants are merchants of building materials, including building trim board.

198.    Defendants impliedly warranted pursuant to ORS 72.3150 that their WindsorONE trim board passed without objection in the trade and was fit for the particular purposes for which it is used—fascia, soffits, corner board, window trim, door trim, and any other exterior trim application—and was used on the exterior of Plaintiff's residence.

199.    Specifically, the prior owner and their contractor and/or architect relied upon Defendants' representations alleged above as the basis for the purchase of Defendants' WindsorONE trim board.

200.    Defendants knew and/or should have known that their WindsorONE trim board was not of acceptable quality given that it was designed and manufactured with a sub-standard adhesive, which rendered it unable to resist moisture as it was intended to do.

201.    Defendants knew and/or should have known that their WindsorONE trim board was not generally fit for the particular purpose for which it was intended to be used and did not pass without objection in the trade, as it was manufactured with sub-standard materials that Defendants should have known would cause it to fail.

202.    Defendants' WindsorONE trim board was not suitable for the particular purpose for which it was purchased given that it was constructed with a non-waterproof adhesive and a non-decay resistant species of low quality wood, which prevented it from being able to serve its particular purpose and from passing without objection in the trade.

203.    Defendants knew and/or should have known that their WindsorONE trim board would reach the end user without substantial change and in the condition in which it was sold.

{SSBLS Main Documents/8887/001/00653742-1 }
Page 48 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

204.    Defendants' WindsorONE trim board is not suitable for its particular purpose and intended use as an exterior trim product, given that it cannot withstand normal weather conditions and absorbs water and moisture, which cause it to prematurely deteriorate, rot, and decay.

205.    Defendants' WindsorONE trim board has failed to pass without objection in the trade and is not of comparable quality to other exterior trim products in its line of trade. Unlike other trim products, Defendants' WindsorONE trim board has absorbed water at an alarming rate, resulting in premature decay, rotting, splitting, warping, and discoloration.

206.    But for Defendants' conduct alleged herein, and their breach of their implied warranty of fitness for particular purpose, Plaintiff and Class members would not have suffered the damages they have sustained to their structures, or related damages, as alleged herein.

207.    As a direct and proximate result of Defendants' breach of their implied warranty of fitness for particular purpose, Plaintiff and Class members have sustained, are sustaining, and will sustain damages to their structures, as well as related damages, as alleged herein.

## SIXTH CLAIM FOR RELIEF

### Breach of Manufacturer's Implied Warranty of Merchantability

### (ORS 72.8020)

208.    Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

209.    Defendants manufactured WindsorONE trim board products and sold the trim board products as retail consumer goods in Oregon.

210.    Defendants designed, developed, tested, manufactured, distributed, marketed, and sold WindsorONE trim board for purposes of its eventual sale to end users and installation in offices, homes, apartments, buildings, and other structures.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

211.    Defendants are manufacturers of building materials, including building trim board.

212.    Defendants impliedly warranted pursuant to ORS 72.8020 that their trim board passed without objection in the trade and was fit for the ordinary purposes for which it is used—fascia, soffits, corner board, window trim, door trim, and any other exterior trim application. Specifically, Plaintiff and his contractor and/or architect relied upon Defendants' representations alleged above as the basis for the purchase of Defendants' WindsorONE trim board.

213.    Defendants knew and/or should have known that their WindsorONE trim board was not of acceptable quality given that it was designed and manufactured with a sub-standard adhesive, which rendered it unable to resist moisture as it was intended to do.

214.    Defendants knew and/or should have known that their WindsorONE trim board was not generally fit for the ordinary purposes for which it was intended to be used and did not pass without objection in the trade, as it was manufactured with sub-standard materials that Defendants should have known would cause it to fail.

215.    Defendants' WindsorONE trim board was not merchantable at the time of sale given that it was constructed with a non-waterproof adhesive and a non-decay resistant species of low quality wood, which prevented it from being able to serve its ordinary purpose and from passing without objection in the trade.

216.    Defendants knew and/or should have known that their WindsorONE trim board would reach the end user without substantial change and in the condition in which it was sold.

217.    Defendants' WindsorONE trim board has failed in its ordinary and intended use as an exterior trim product, given that it cannot withstand normal weather conditions and absorbs water and moisture, which cause it to prematurely deteriorate, rot, and decay.

218.    Defendants' WindsorONE trim board has failed to pass without objection in the trade and is not of comparable quality to other exterior trim products in its line of trade. Unlike

{SSBLS Main Documents/8887/001/00653742-1 }
Page 50 -   CLASS ACTION ALLEGATION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

other trim products, Defendants' WindsorONE trim board has absorbed water at an alarming rate, resulting in premature decay, rotting, splitting, warping, and discoloration.

219.      But for Defendants' conduct alleged herein, and their breach of the manufacturer's warranty of merchantability accompanying their WindsorONE trim board, Plaintiff and Class members would not have suffered the damages they have sustained to their structures, or related damages, as alleged herein.

220.      As a direct and proximate result of Defendants' breach of the manufacturer's warranty of merchantability, Plaintiff and Class members have sustained, are sustaining, and will sustain damages to their structures, as well as related damages, as alleged herein.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Relief

221.      Plaintiff re-alleges and incorporates by reference each of the paragraphs above. This claim for relief is brought against Defendants on behalf of all Class members.

222.      Plaintiff, on behalf of himself and the Class members, seeks a Court declaration of the following:

a.      All of Defendants' WindsorONE trim board is defective and is not fit for its intended use as fascia, soffits, corner board, band board, window trim, door trim, or any other typical exterior application, as its absorption of water and moisture makes it inappropriate for exterior use and causes it to rot, swell, buckle, and decay when employed in an exterior use;

b.      All of Defendants' WindsorONE trim board has a defect in workmanship and material that causes failures; and

c.      Defendants' warranties failed of their essential purpose, and the limitations contained in the warranties were unconscionable and unenforceable.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays that the Court:

A.    Declare, adjudge, and decree that Defendants have committed the violations of state law alleged herein;

B.    Determine that under Federal Rule of Civil Procedure 23, this civil action may be maintained as a class action, and certify it as such;

C.    Order that judgment be entered for Plaintiff and the Class on their claims against Defendants;

D.    Award Plaintiff and the Class damages, as determined at trial; and

E.    Order such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

DATED this 12th day of June, 2017.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.


By: s/Steve D. Larson
    **Steve D. Larson**, OSB No. 863540

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone:  (503) 227-1600
Facsimile:  (503) 227-6840
Email:        slarson@stollberne.com

-and-

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

**Michael McShane** (to be admitted *pro hac vice*)
**S. Clinton Woods** (to be admitted *pro hac vice*)
AUDET & PARTNERS, LLP
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone:  (415) 568-2555
Facsimile:  (415) 568-2556
Email:      mmcshane@audetlaw.com
            cwoods@audetlaw.com

-and-

**Shawn J. Wanta** (to be admitted *pro hac vice*)
**Hans W. Lodge** (to be admitted *pro hac vice*)
BAILLON THOME JOZWIAK & WANTA LLP
100 South Fifth Street, Suite 1200
Minneapolis, MN 55402
Telephone:  (612) 252-3570
Facsimile:  (612) 252-3571
Email:      sjwanta@baillonthome.com
            hlodge@baillonthome.com

-and-

**Charles E. Schaffer** (to be admitted *pro hac vice*)
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (877) 882-1011
Facsimile:  (215) 592-4663
Email:      cschaffer@lfsblaw.com

Attorneys for Plaintiff

{SSBLS Main Documents/8887/001/00653742-1 }
Page 53 -  **CLASS ACTION ALLEGATION COMPLAINT**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840