**Karl R. Loureiro** (to be admitted *pro hac vice*)
Email:  Karl.Loureiro@lewisbrisbois.com
**William E. Pallares** (Admitted *pro hac vice*)
Email:  William.Pallares@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

[Additional counsel listed on the signature page]

Attorneys for Defendants WINDSOR SURRY COMPANY,
WINDSOR WILLITS COMPANY, and WINDSOR
HOLDING COMPANY

Honorable Ann Aiken

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ROBERT TORCH and JESUS GOMEZ, on behalf of themselves and all others similarly situated,, <br><br>          Plaintiffs, <br> v. <br> WINDSOR SURRY COMPANY, d/b/a WINDSORONE; WINDSOR WILLITS COMPANY, d/b/a WINDSOR MILL; and WINDSOR HOLDING COMPANY, <br><br>          Defendants. | Case No. 3:17-cv-00918-AA <br> **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** <br> **Request for Oral Argument** |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................. 1

1.      INTRODUCTION .......................................................................................................... 1

2.      FACTUAL BACKGROUND ......................................................................................... 5

    A.    Windsor's Factual History, Limited Warranty, And Warranty Disclaimer .................. 5

    B.    Plaintiff Torch ............................................................................................................. 6

    C.    Plaintiff Gomez ........................................................................................................... 8

3.      LEGAL STANDARDS ................................................................................................. 9

4.      ARGUMENT ............................................................................................................... 10

    A.    The Strict Product Liability Claims Are Barred By The Statute Of Limitations ......... 10

    B.    The Negligence Claims Are Barred By The Statute Of Limitations ........................... 12

    C.    The Breach Of Express Warranty Claims Are Also Barred By The Statute Of
          Limitations ................................................................................................................. 13

    D.    The Breach Of Express Warranty Claims Fail Because Any "Warranty" Beyond The 5
          Year Primer Warranty And 10 Year Glue Warranty Is Specifically Excluded From The
          Warranty .................................................................................................................... 16

    E.    The Breach Of Express Warranty Claims Fail Because No Statement Was The Basis
          Of The Bargain Between Plaintiffs And Defendants ................................................. 17

    F.    Windsor's Express Warranty Bars Any Implied Warranty Claims And Claims For
          Consequential Damages ........................................................................................... 19

    G.    The Breach Of Implied Warranty Claims Are Barred By The Statute Of Limitations 20

    H.    The Breach Of Implied Warranty Claims Are Barred Because No Privity Exists ....... 21

    I.    The Limited Warranty Bars Claims For Consequential Damages .............................. 22

5.      CONCLUSION ............................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Am. Fuel & Petrochemical Mfrs. v. O'Keefe*,
    134 F. Supp. 3d 1270 (D. Or. 2015) ...................................................................... 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 9

*Benson Tower Condominium Owners Ass'n v. Victualic Co.*
    No. 3:130-cv-01010-SI, 2014 WL 5285475 (D. Or. Oct. 15, 2014) ..................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 9

*CHMM, LLC v. Freeman Marine Equipment, Inc.*,
    No. 3:12-CV-01484-ST, 2013 WL 3025137 (D. Or. June 14, 2013) .................... 18

*Independence Apartments Associates v. Louisiana-Pacific Corp.*,
    44 F. Supp. 2d 1120 (D. Or. 1999) ................................................................. 16, 22

*Innovative Metal Design, Inc. v. U.S. Bank National Association*,
    2015 WL 9434779 (D. Or. Nov. 18, 2015) .......................................................... 11

*Mazza v. American Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................... 10

*Philpott v. A.H. Robins Co.*,
    710 F.2d 1422 (9th Cir. 1983) ............................................................................. 11

*Pulido v. United Parcel Service General Services Co.*,
    31 F. Supp. 2d 809 (D. Or. 1998) ................................................................. 10, 12

*Rose City Paper Box, Inc. v. Egenolf Graphic Mach. Int'l, Inc.*,
    827 F. Supp. 646 (D. Or. 1993) ..................................................................... 16, 20

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................. 10

## State Court Cases

*Atlas Mut. Ins. Co. v. Moore Dry Kiln Co.*,
    38 Or. App. 111 (Ct. App. Or. 1979) .................................................................... 19

*Davis v. Homasote Company*,
    281 Or. 383 (Or. 1978) ......................................................................................... 21

*Dravo Equipment Co. v. German*,
    73 Or. App. 165 (Ct. App. Or. 1985) ................................................................. 21

*Gladhart v. Oregon Vineyard Supply Co.*,
    164 Or. App. 438 (Ct. App. Or. 1999) ............................................................... 15

*Hunter v. Woodburn Fertilizer, Inc.*,
    208 Or. App. 242 (Ct. App. Or. 2006) ............................................................... 20

*Larrison v. Moving Floors, Inc.*,
    127 Or. App. 720 (Ct. App. Or. 1994) ............................................................... 17

*Permapost Prod. Co. v. Osmose, Inc.*,
    200 Or. App. 699 (Ct. App. Or. 2005) .......................................................... 15, 20

*Simonsen v. Ford Motor Co.*,
    169 Or. App. 46 (Or. Ct. App. 2004) ................................................................. 21

*Sponseller v. Meltebeke*,
    280 Or. 361 (Or. 1997) ....................................................................................... 20

*Weston v. Camp's Lumber & Bldg. Supply, Inc.*,
    205 Or. App. 347 (Ct. App. Or. 2006) .......................................................... 12, 15

## Statutory Authorities

O.R.S. § 30.905 ................................................................................................... 4, 10, 12

O.R.S. § 72.3130(1)(a) .............................................................................................. 5, 17

O.R.S. § 72.3160 ....................................................................................................... 5, 19, 22

O.R.S. § 72.3180 ....................................................................................................... 5, 21

O.R.S. § 72.7250 ......................................................................................... 4, 10, 13, 14, 15

## Federal Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 9

## NOTICE OF MOTION AND MOTION TO DISMISS

On December 28, 2017, or as soon thereafter as the matter may be heard, Defendants Windsor Surry Company, Windsor Willits Company, and Windsor Holding Company (together, "Windsor" or "Defendants") will and hereby do move to dismiss the First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants request that this Court dismiss all of the causes of action in the FAC.  Pursuant to Rule 7-1 of the Local Rules, the parties have met and conferred in good faith about this motion and have not been able to reach agreement on the viability of the claims in the FAC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

Despite being denied class certification in a similar action by the Northern District of California (Orrick, J.), Plaintiffs, Robert Torch and Jesus Gomez (together "Plaintiffs"), and the same group of plaintiffs' lawyers bring this purported class action against Defendants in Oregon.  Although Plaintiffs complain about Defendants' architectural wood trim boards and Defendants' advertising regarding the trim boards, they have no claim.

Plaintiff Torch admits that the decorative Windsor trim boards used on an extension of his house were purchased a decade ago—in 2007—by a nonparty to this litigation – a prior owner of the house and the builder of the extension.  Plaintiff Torch did not choose or purchase the trim, much less review or rely upon any of Defendants' marketing materials regarding trim to do so.  Further, any damage to the trim boards stems from faulty installation and poor maintenance of the trim by third party contractors and the prior owner – before Plaintiff even bought the house.  Moreover, the applicable statutes of limitations bar Plaintiff Torch's suit, which comes many years after the trim was purchased and the damage was noted.  On top of that, Windsor's express warranty disclaims any other warranties or damages, doesn't apply to the

sort of damage claimed by Torch, only provides for replacement trim boards (which were offered to Torch), and has expired.

With respect to Plaintiff Gomez, Defendants assert, as the Court is aware, that his claims are barred due to a settlement agreement entered into between Plaintiff Gomez and Defendants. Notwithstanding the settlement agreement to which Plaintiff Gomez has breached, or the fact that damage to the trim boards also stem from faulty installation and poor maintenance, Plaintiff Gomez also admits that the Windsor trim boards used on his home were purchased in or around November of 2006 and that he discovered deterioration in the Windsor trim boards around March of 2014. Consequently, Plaintiff Gomez's claims are barred by all the applicable statutes of limitations. Lastly, the same express warranty disclaimers applicable to Plaintiff Torch's claims similarly apply to Plaintiff Gomez's claims, where only replacement trim board is the available remedy (to which Plaintiff Gomez accepted and has now repudiated).

Following on their failed effort to instigate a class action in California, Plaintiffs and their lawyers now seek to certify a federal class action in Oregon based on the fact that Defendants' trim board is composed of organic (i.e., preservative-free) Radiata pine—a fact that Defendants themselves emphasize in their marketing materials—which Plaintiff alleges is more susceptible to rot than certain other species (information also disclosed by Defendants). In reality, any damage purportedly claimed by Plaintiffs resulted from improper installation of the trim on their homes that violated Defendants' installation instructions and the building code. Defendants will defend the quality of their trim board in an appropriate forum and in an appropriate case, but Plaintiffs' action is meritless and has no place in court—and certainly not as a putative federal class action. Indeed, as described in further detail in Defendants' Motion to Strike the Class Allegations to Plaintiffs' First Amended Complaint (concurrently filed herewith), a similar

putative class action brought by the same counsel representing Torch was recently denied class status. *Cover v. Windsor Surry et al.*, No. 14-cv-05262-WHO (Doc. 173) (N.D. Cal. July 24, 2017) (Orrick, J.). This action is even more meritless than that one.

Plaintiffs' attempts to gain leverage by initiating this patently unmeritorious action should be rejected. For the reasons set forth herein, Plaintiffs' claims are inactionable as a matter of law and should be dismissed with prejudice for multiple independently dispositive reasons:

First, each of Plaintiffs' claims for relief is time-barred. With respect to Plaintiff Torch, the FAC alleges that a former owner of Plaintiff Torch's home, Mr. Hall, purchased and installed WindsorONE trim board in 2007 because his contractor verbally recommended WindsorONE based on information he had received from third parties. (FAC ¶¶ 101-106.) The FAC does not allege that Plaintiff Torch ever read or heard of Defendants' marketing materials and concedes that Plaintiff Torch never viewed Defendants' warranty. The FAC also alleges that the trim board, which was installed in 2007, rotted before the 5-year warranty on its factory primer expired (which would mean "before the end of 2012"). (FAC ¶ 124.) The FAC further alleges that Plaintiff Torch discovered that boards were "deteriorating," "cracking," "warping" and "had fungus growing" by 2014. (FAC ¶ 114.) In doing so, the FAC concedes that the claims were brought outside the statute of limitations because Plaintiff Torch waited until mid-2017 to bring this suit.

Similarly, Plaintiff Gomez alleges that he began building his home in Bridal Veil, Oregon in May 2006 and completed construction by April of 2007. (FAC ¶¶ 136-137.) As part of the construction, Plaintiff alleges that he hired his siding contractor, Enrique Rodriguez, and instructed Mr. Rodriguez to purchase the WindsorONE trim board to be used on his home from Parr Lumber in or about November of 2006. (FAC ¶¶ 140, 145.) Mr. Rodriguez subsequently

installed the WindsorONE trim boards on to Plaintiff Gomez's home between November of 2006 and the time of completion of the home by April of 2007. (FAC ¶ 149.) The FAC further alleges that Plaintiff Gomez discovered deterioration in the WindsorONE trim boards in approximately March of 2014 (FAC ¶ 151.) Consequently, the FAC concedes that Plaintiff Gomez's claims were also brought outside of the statute of limitations because he waited until September of 2017 to bring this suit.

Thus, each Plaintiffs' strict product liability and negligence claims are barred by the two-year statute of limitations because the latest time that Plaintiffs could have filed their suit was 2016, two years after they noticed damage from the product in 2014. O.R.S. § 30.905. Plaintiffs' breach of express warranty claims purportedly based on nine of Windsor's marketing statements and implied warranty claims (the Fourth and Fifth causes of actions) are also barred by the four-year statute of limitations, which accrues from the date of the delivery of the product, (O.R.S. § 72.7250). This means that Plaintiff Torch's claim expired (at the latest) in February 2012, four years after the date of the last purchase of WindsorONE trim (see FAC ¶ 107) and Plaintiff Gomez's claim expired (at the latest) in November of 2010 (FAC ¶ 145.) Plaintiffs' case should be summarily dismissed because their claims are all barred by the applicable statutes of limitations.

Second, even if Plaintiffs' claims were not time-barred—which is not the case— Plaintiffs' claims lack facial merit as a matter of law. Plaintiffs Torch's and Gomez's express warranty claim fails because they never viewed any of the statements claimed to be express warranties and Windsor's Limited Warranty bars any marketing statements from being taken as warranties. Plaintiff Torch's express warranty claims further fail because no warranties ever became the basis of the bargain as required by State law. O.R.S. § 72.3130(1)(a). Plaintiff

Torch's implied warranty claims also fail because no privity exists between Plaintiff Torch and Windsor for any implied warranty claims to operate.  See O.R.S. § 72.3180.  Moreover, Windsor's express Limited Warranty, which clearly and conspicuously excludes any implied warranties, also bars both Plaintiff Torch and Gomez's implied warranty claims.  (FAC ¶108.)  The Limited Warranty also bars recovery for any consequential damages.  *Id*; O.R.S. § 72.3160.

In sum, the facts and the law conclusively establish that Plaintiffs' FAC is fatally flawed and should be dismissed with prejudice.  Here are the facts.

## 2.      **FACTUAL BACKGROUND**

### A.      **Windsor's Factual History, Limited Warranty, And Warranty Disclaimer**

Windsor is a family-owned business that manufactures and sells decorative architectural wood trim. The Windsor product at issue—WindsorONE Traditional—is a branded product comprised of Radiata Pine board sections that are cut to be free of deficiencies naturally occurring in the wood, finger-jointed and edge-glued to create long, wide boards free of knots, pitch pockets and other deficiencies, and then factory triple-primed with three coats of exterior grade primer paint on all six sides.  WindsorONE is sold together with express installation instructions that detail how the product is to be used and both an express limited warranty (warranting the primer paint for 5 years and the glue for 10 years) and an express warranty disclaimer (disclaiming all other warranties, including disclaiming all implied warranties, and disclaiming any damages other than replacement product).  Windsor also posts its instructions on its website, which also provides its warranty, warranty disclaimer, and product information.  Windsor does not provide any warranty regarding rot on WindsorONE Traditional trim.  Windsor also expressly discloses that its trim is made with Radiata Pine and that Radiata Pine is not rot resistant.

Specifically, for the years 2006 and 2007, Windsor's full warranty regarding its glue and primer provided:

> **Limited Warranty:**
>
> Windsor Mill guarantees WindsorONE's end and edge-gluing for 10 years and its primer for 5 years. Windsor Mill will replace, without charge, any WindsorONE product that is installed according to directions and fails to meet this warranty within that time. Such replacement is the exclusive remedy for breach of warranty, with no consequential or other damages recoverable.
>
> **Warranty Disclaimer:**
>
> Windsor Mill's guarantee is limited to the above Limited Warranty. In Windsor Mill's opinion, its statement about WindsorONE products on this website and in printed literature are believed to be accurate, but do not constitute separate warranties. There are no warranties, expressly or implied, including merchantability, beyond the above Limited Warranty.
>
> (FAC ¶ 108, 146.)

## B.    Plaintiff Torch

The FAC's allegations regarding the WindsorONE Traditional trim on Plaintiff Torch's home addition reads like a game of telephone. It alleges that a nonparty to this litigation, Mr. Hall, bought WindsorONE trim board in 2007 because Mr. Hall's contractor, Don Young, orally relayed information that he had received from another third party vendor. (FAC ¶¶ 101-106.) That vendor was not an agent of Windsor's. (See FAC ¶¶ 101-106.) Plaintiff Torch had no involvement in the choosing of WindsorONE Traditional Trim or in any review of Windsor's marketing materials. Mr. Hall installed WindsorONE on his addition in 2007, purportedly relying on Mr. Young's recommendation. The FAC's allegations are purposefully vague as to any specific marketing statements Mr. Young read, any specific marketing materials the third party vendor purportedly gave Mr. Young, and what, if any, information Mr. Young relayed back to Mr. Hall. However, the FAC is clear that Plaintiff Torch was omitted from any part in choosing the Windsor trim. The FAC contains an image of a purported screen capture of the

Windsor Limited Warranty in 2007, but never alleges that Mr. Young or Mr. Hall (let alone Plaintiff Torch) reviewed that image or iteration of the Windsor warranty.  (See FAC ¶ 108.) Indeed, the FAC admits that Plaintiff Torch did not ever review the Windsor warranty, and never alleges that he reviewed any Windsor marketing statements.  (FAC ¶ 95.)

Plaintiff Torch purchased his house from Mr. Hall in 2011, well after the WindsorONE trim had been installed and well after and separate from any review or discussion regarding Windsor's marketing materials had taken place among Mr. Hall and his contractors.  (FAC ¶ 113.)  There are no allegations that Mr. Hall disclosed that WindsorONE trim was used on the house or that Mr. Hall—or any other person—shared any information whatsoever about the trim with Plaintiff Torch.  Nor are there allegations that Plaintiff Torch knew the addition used WindsorONE Traditional trim or had read anything about WindsorONE Traditional trim prior to buying this house.  In short, there are no allegations that anything having to do with WindsorONE Traditional trim played any role whatsoever in Plaintiff Torch's decision to purchase his house in 2011.

Despite these major deficiencies, when Defendants were first contacted on behalf of Plaintiff Torch, they investigated his complaint, determined that his claimed damage was caused by improper installation that violated the building code, and, even so, still offered to provide him with replacement trim product, as part of their proactive customer service efforts.  (FAC ¶¶ 124-125.)  Plaintiff Torch declined this offer.

Plaintiff Torch alleges that Mr. Hall bought the WindsorONE Traditional trim used on the house addition in late 2007.  (FAC ¶¶ 101, 107).  Plaintiff alleges that "[t]he WindsorONE trim board rotted before the 5-year warranty on its primer…elapsed," e.g., before February 19, 2013 (FAC. ¶ 124).  Plaintiff further alleges that he noticed alleged rot in WindsorONE trim

boards "in late 2014."  (FAC ¶ 114.)  If the first allegation is true, the statute of limitations began

running before late 2012 – 5 years after the prior owner purchased the WindsorONE Traditional

trim.  Even if that is false, and the second allegation is true instead, the statute of limitations

starting running, at the latest, in late 2014 – when Plaintiff Torch alleges he was fully aware of

the damage.

      Either way, Plaintiff Torch, who did not purchase the WindsorONE Traditional trim or

rely on any of Defendants' representations, first brought this meritless putative class action in

June 2017, after the applicable statutes of limitations had run.

### C.     <u>Plaintiff Gomez</u>

      The FAC's allegations regarding the WindsorONE Traditional trim on Plaintiff Gomez's

are similarly deficient.  The FAC alleges Plaintiff Gomez bought WindsorONE Traditional trim

in 2006 from Parr Lumber, through his contractor Enrique Rodriguez.  (See FAC ¶¶ 140, 145.)

Subsequently, not until March of 2014 did Plaintiff Gomez notice a "fair amount" of

"deterioration" of the Windsor ONE trim board on his home.  (FAC ¶ 151.)  Upon discovery of

this deterioration, Plaintiff Gomez contacted Parr Lumber (a wholesaler that sells WindsorONE,

but otherwise not associated with Defendants) and raised the purported issue as to the

WindsorONE trim but did not contact Norcon Consulting Group ("Norcon") (the investigative

agent of Windsor's attorneys) until September 10, 2015.  (FAC ¶¶ 152-153.)  Shortly thereafter,

Norcon worked with Plaintiff Gomez to investigate the issues with his WindsorONE trim and

assist him with the submission of a warranty claim, to which Plaintiff Gomez officially did so in

September 2015.  (FAC ¶¶ 154-156.)  Norcon determined that Plaintiff Gomez's damage was

wood decay which was not covered by warranty and a result of installation concerns, including

improper flashing, inadequate drip caps or clearance from underlying surfaces, overtightened

siding, and lack of primed cuts.  (FAC ¶¶ 158-159.)  Notwithstanding the above, Defendants made Plaintiff Gomez a settlement offer on July 31, 2017 for material credit of 784 linear feet of WindsorONE+ Protected.  (FAC ¶ 160.)  Interestingly enough, the FAC makes no mention of whether Plaintiff Gomez accepted or rejected the settlement agreement and instead ends the narrative of facts after the settlement offer.  (FAC ¶¶ 161-169.)

Indeed, after the settlement offer, Plaintiff Gomez did in fact agree to the settlement offer from Windsor to which he then repudiated necessitating Defendants to file a breach of contract claim against Plaintiff Gomez, entitled *Windsor Surry Company, et al. v. Jesus Gomez,* Case No. 17CV41107, on September 20, 2017 in the Circuit Court of the State of Oregon, County of Multnomah.  (See Order Granting Request for Judicial Notice, Dkt. No. 45 at 6.)

Like, Plaintiff Torch's claims, Gomez's claims are also barred by the applicable statute of limitations.

## 3.    LEGAL STANDARDS

"Where the plaintiff 'fails to state a claim upon which relief can be granted,' the court must dismiss the action." *Am. Fuel & Petrochemical Mfrs. v. O'Keefe*, 134 F. Supp. 3d 1270, 1276 (D. Or. 2015) (quoting Fed. R. Civ. P. 12(b)(6).)  "To survive a motion to dismiss, the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1276-77 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For the purposes of a Rule 12(b)(6) motion, the FAC's allegations are taken as true.  However, "[b]are assertions that amount to nothing more than a 'formulaic recitation of the elements' of a claim 'are conclusory and not entitled to be assumed true.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009)).  "Rather, to state a plausible claim for relief, the complaint 'must contain sufficient allegations of underlying facts' to support its legal conclusions."  *Id.* (quoting *Starr v. Baca*, 652

F.3d 1202, 1216 (9th Cir. 2011)).

The statute of limitations for strict product liability claims in Oregon[1] is two years after Plaintiff "discovers or reasonably should have discovered" the property damage.  O.R.S. § 30.905.  Likewise, the statute of limitations for a negligence claim is two years.  *Pulido v. United Parcel Service General Services Co.*, 31 F. Supp. 2d 809, 815 (D. Or. 1998); O.R.S. § 30.905.  The statute of limitations for breach of express warranty, as for any contract for sale, is four years after the cause of action has accrued.  O.R.S. § 72.7250.  Such a cause of action accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  *Id.* (emphasis added).  The breach occurs "when tender of delivery is made."  *Id.*  The statute of limitations for implied warranties is also four years after the cause of action has accrued and governed by O.R.S. § 72.7250.

**4.  ARGUMENT**

   **A.  The Strict Product Liability Claims Are Barred By The Statute Of Limitations**

The statute of limitations for strict product liability claims in Oregon is two years after Plaintiff "discovers or reasonably should have discovered" the property damage.  O.R.S. § 30.905.   The FAC alleges that Torch's "trim board rotted before the 5-year on its factory-primer…elapsed" – which would mean Plaintiff Torch must have been aware of the alleged rot prior to February 19, 2013, 5 years after the last of the WindsorONE Traditional trim board was purchased.  (FAC ¶ 124.)  As such, the statute of limitations ran on February 19, 2015.  Plaintiff Torch also unequivocally alleges that he discovered the damage to Windsor trim, at the latest, in

---

[1]    Oregon substantive law applies to Plaintiff's claims. See *Mazza v. American Honda Motor Co., Inc.* 666 F.3d 581, 594 (9th Cir. 2012) ("each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place").

2014.  (FAC ¶ 114.)  Thus, the very latest time to bring this claim, even ignoring Plaintiff's prior admissions, would have been 2016.  This suit, initially brought by Plaintiff Torch in June 2017, is long past the statute of limitations and must be dismissed.

With respect to Plaintiff Gomez, the FAC makes it clear that he first discovered a "fair amount" of deterioration of the Windsor trim in March of 2014.  (FAC ¶ 151.)  As such, the statute of limitations ran in March of 2016, well before Plaintiff Gomez was introduced into this matter with the filing of the Motion for Leave to File a First Amended Complaint on September 22, 2017 and the actual filing of Plaintiffs' FAC, adding Plaintiff Gomez, on November 7, 2017.

Recognizing the glaring statute of limitations problems, the FAC makes a half-hearted attempt to excuse Plaintiffs' delay with four paragraphs of perfunctory and insufficient allegations of equitable estoppel.  (FAC ¶¶ 181-184.)  However, Plaintiffs' allegations are conclusions of law rather than facts and completely contradicted by the FAC's factual allegations admitting Plaintiffs' actual knowledge of their alleged damage by specific dates that mean that their claims are time barred.  Even if the Court were to consider these generic estoppel allegations as facts rather than legal conclusions, they are insufficient as a matter of law. The only two instances in which equitable estoppel applies are (1) if the defendant lulled the plaintiff "by affirmative inducement, into delaying the filing of a cause of action" or (2) if the relationship of the parties imposes a duty upon the defendant to make a disclosure).  *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1425 (9th Cir. 1983).  Neither of which are alleged sufficiently – or at all – here.  *See Innovative Metal Design, Inc. v. U.S. Bank National Association*, 2015 WL 9434779, at *8 (D. Or. Nov. 18, 2015) (dismissing complaint because pleading failed to allege defendant attempted to lull plaintiff into delaying the filing of a lawsuit or into believing it had no cause of action against defendants).

**B.**    **The Negligence Claims Are Barred By The Statute of Limitations**

Likewise, the statute of limitations for a negligence claim is two years. *Pulido v. United Parcel Service General Services Co.*, 31 F. Supp. 2d 809, 815 (D. Or. 1998); O.R.S. § 30.905.  In *Weston v. Camp's Lumber & Bldg. Supply, Inc.*, 205 Or. App. 347, 365 (Ct. App. Or. 2006), the plaintiff claimed that the wood sold was defective because it was infested with beetles which the plaintiff did not discover until later.  Because the plaintiff alleged that damage to their residence occurred "from the time that the beetles were introduced to the home's framing," the court held that the "damage" of which plaintiffs complained occurred when the beetles were first introduced to their property and the two-year period statute of limitations was triggered when this occurred.  *Id.*

The same is true here. Plaintiffs claim that the Windsor product is defective because of the "failure to use a rot-resistant wood," the "failure to use a preservative to deter wood rot," and the "failure to use a waterproof adhesive."  (FAC ¶ 2.)  Each of these alleged issues occurred at the time of the purchase of the WindsorONE Traditional trim, which allegedly occurred for Plaintiff Torch between October 16, 2007 and February 19, 2008 and for Plaintiff Gomez between November of 2006 and April of 2007.  Plaintiffs further claim that the wood used on Windsor trim, radiata pine, "should not be used as wood for exterior trim board, trim, or moldings because it rots."  (FAC ¶ 8.)  Thus, these purported defects were present in the product from the moment that Plaintiffs purchased it, and the statute of limitations ran two years later. This would have occurred by February 19, 2010 for Plaintiff Torch (prior to Plaintiff Torch purchasing his house) and by April of 2009 for Plaintiff Gomez.

Even reading Plaintiffs' contradictory allegations in the most favorable light possible – that Plaintiff Torch "discovered" the rot in late 2014 and Plaintiff Gomez discovered the

deterioration in March 2014 – Plaintiffs still brought this action too late.[2]  As shown supra, discovery of even a concealed injury (which this was not) affords Plaintiffs two years to bring a lawsuit.  Plaintiffs needed to have brought this lawsuit in 2016 for it to have been timely. As Plaintiff Torch did not bring his lawsuit until June 2017, and Plaintiff Gomez in September 22, 2017 at the earliest, their claims are barred.

Moreover, equitable estoppel does not save Plaintiffs' claims.  As demonstrated above at § IV.A, Plaintiffs' conclusory allegations of fraudulent concealment are nowhere sufficient to meet the standards required under Oregon law.  Plaintiffs' untimely negligence claims must be dismissed.

**C.      The Breach Of Express Warranty Claims Are Also Barred By The Statute Of Limitations**

Plaintiffs' express warranty claim is also brought too late.  In Oregon, the statute of limitations for breach of any contract for sale "must be commenced within four years after the cause of action has accrued."  O.R.S. § 72.7250.  A cause of action accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."  *Id.* (emphasis added).  The breach occurs "when tender of delivery is made."  *Id.*

Plaintiffs allege that nine marketing statements and Defendants' 10-year warranty on its glue constitute express warranties.[3]  (FAC ¶¶ 206, 213.)  This argument fails at the outset

---

[2]      The FAC contradicts itself as to when Plaintiff Torch's damage occurred.  Plaintiff Torch alleges that he discovered rot in 2014, but he also alleges that the "WindsorONE trim board rotted before the 5-year warranty on its factory primer…elapsed."  (FAC. ¶ 124.)  Given that the trim board installed on Plaintiff Torch's residence was purchased in 2007 and 2008, the 5 year primer warranty elapsed in February 2013, and the rot allegedly occurred prior to that date. The statute of limitations, pursuant to Plaintiff Torch's own conceded facts, ran in February 2015, more than two years prior to the filing of this lawsuit.

[3]      It is unclear whether or not Plaintiffs are also bringing a claim for a breach of express warranty based on Defendants' 5-year warranty on its factory primer.  To the extent that they are,

because Plaintiff Torch neither reviewed Defendants' marketing statements or its warranties. See *infra* at § IV.E.  Moreover, putting aside the reality that Windsor only expressly warrants its paint (for 5 years) and glue (for 10 years) and disclaims all other warranties, including the marketing statements Plaintiffs claims are "express warranties," any causes of action which could arise from these marketing statements accrued upon delivery of the product in 2007 and January and February 2008 for Plaintiff Torch and delivery of the product in November 2006 (or through April 2007 at the latest) for Plaintiff Gomez.  Consequently, claims regarding breach of express warranty expired four years later, in 2011or February 2012 for Plaintiff Torch and 2010 or 2011 for Plaintiff Gomez.  See O.R.S. § 72.7250.

The only exception to this statute of limitations is if a warranty "explicitly extends to future performance of the goods and the discovery of the breach must await the time of such performance."  O.R.S. § 72.7250.  This limited exception does not act to save Plaintiffs' breach of express warranty claims.  That is because none of the cited marketing statements explicitly extends to the future performance of the product.  (See FAC ¶ 206.)  For example, Plaintiffs contend that the marketing statement "Windsor Mill uses the highest quality materials to produce the highest quality products" is an express warranty which forms the basis of their claims.  However, to the extent that it can even qualify as a warranty, it is not a statement of explicit future performance guarantee and any claim based on this statement ran five years from delivery of the product (2012 for Plaintiff Torch and 2011 for Plaintiff Gomez).  *See Weston*, 205 Or. App. at 368 (statement that lumber would be "standard grade or better" is not an explicit future performance guarantee); O.R.S. § 72.7250 (four year statute of limitations); FAC. ¶206.

---

these claims are clearly precluded, because, these claims elapsed in 2015 for Plaintiff Torch and 2013 or 2014 for Plaintiff Gomez.  Further, the claims are also precluded because Plaintiffs failed to make any warranty claim to Windsor regarding the primer within the 5 years for which the primer was warranted.

Similarly, statements about use of the product such as "no special precautions are necessary when working with WindsorONE versus composite trim boards" or that "WindsorONE is superior to #2 Pine, Spruce, or Fir, primed or unprimed" or "WindsorONE is suitable for all interior and exterior applications" in no way guarantees any future performance of the trim board. *See Gladhart v. Oregon Vineyard Supply Co.*, 164 Or. App. 438, 441 (Ct. App. Or. 1999) (rev'd on other grounds) ("phylloxera free grape plants" is not a warranty that explicitly extends to future performance of the goods); *Benson Tower Condominium Owners Ass'n v. Victualic Co.*, 3:130-cv-01010-SI, 2014 WL 5285475, at *8-9 (D. Or. Oct. 15, 2014) ("Victualic Products were suitable for installation in portable water systems in Portland, Oregon" not a warranty of future performance). Courts have also held statements describing the quality of the wood are not a warranty explicitly extending to future performance. *Permapost Prod. Co. v. Osmose, Inc.*, 200 Or. App. 699, 707 (Ct. App. Or. 2005) ("free from defect and could be used in plaintiff's wood products safely" not a future performance warranty); *Benson Tower Condominium Owners Ass'n*, 2014 WL 5285475, at *8-9 ("Victualic Products are free from defects in materials and workmanship" not warranty of future performance). Thus, statements that "WindsorONE is superior to wood and should be thought of 'as turbo wood'" or that WindsorONE has "all the great qualities of wood, but in addition, it benefits from increased structural stability, decreased cupping, warping, or twisting," or that WindsorONE "joints are stronger than the wood itself, and waterproof" are simply not warranties extending to future performance.

Because none of these nine marketing statements can constitute a warranty explicitly extending to future performance, Plaintiffs' express warranty claims accrued upon delivery of the WindsorONE trim in 2007/2008 for Plaintiff Torch and 2006/2007 for Plaintiff Gomez, to

which their claims expired four years later.  Plaintiffs' suit, brought initially June 2017 for

Plaintiff Torch and November 2017 for Plaintiff Gomez, is barred by the statute of limitations.[4]

      **D.**      **The Breach Of Express Warranty Claims Fail Because Any "Warranty"**

                **Beyond The 5 Year Primer Warranty And 10 Year Glue Warranty Is**

                **Specifically Excluded From The Warranty**

Under Oregon law, "a seller, as the master of the warranty's destiny, is free to make it as

broad or as narrow as it chooses."  *Independence Apartments Associates v. Louisiana-Pacific*

*Corp.*, 44 F. Supp. 2d 1120, 1122 (D. Or. 1999).  Defendants' express warranties on its primer

and glue specifically states that they "guarantee[] WindsorONE's end and edge-gluing for 10

years and its primer for 5 years" and that "statements about WindsorONE products…do not

constitute separate warranties.  There are no warranties, express or implied, including

merchantability, beyond the above Limited Warranty."  (FAC ¶¶ 108, 146.)  All of the

"marketing statements" Plaintiffs claim are "express warranties" are barred by Defendants' plain

statement that they "do not constitute separate warranties" and that there are no

warranties…beyond the above Limited Warranty."

As such, Plaintiffs' claims are excluded from Windsor's Limited Express Warranties

because Defendants, as the seller, are "the master of the warranty's destiny" and "free to make it

as broad or as narrow as it chooses."  See *Independence Apartments Associates*, 44 F. Supp. 2d

at 1122.

---

[4]     As demonstrated above at § IV.A, equitable tolling is not available to Plaintiffs here.
Indeed, there were no representations made by Windsor to Plaintiff Torch, and but a mere
allegation that a Parr Lumber representative stated that the WindsorONE trim board "was the
best in the business", for which Plaintiffs claim they relied upon in not bringing a lawsuit.  (FAC
¶ 142.)  (See *Rose City Paper Box, Inc. v. Egenolf Graphic Mach. Int'l, Inc.*, 827 F. Supp. 646,
650 (D. Or. 1993) (where no facts indicated that manufacturer made any false representations to
Plaintiff or even had any contact with Plaintiff after tender of delivery, equitable estoppel is not
available to toll the statute of limitations).

Plaintiffs' express warranty claims fail independently for this reason.

**E.    The Breach Of Express Warranty Claims Fail Because No Statement Was The Basis Of The Bargain Between Plaintiffs And Defendants**

There are two prerequisites to a claim for breach of an express warranty: (1) there must be an affirmation of fact or description of the goods by the seller and (2) the factual affirmation or description "must be the basis of the bargain."  O.R.S. § 72.3130(1)(a); *Larrison v. Moving Floors, Inc.*, 127 Or. App. 720, 724 (Ct. App. Or. 1994).  Plaintiff Torch has admitted that he did not review Defendants' marketing materials or warranty, nor did he rely on them.  (See FAC. ¶ 96.)  Therefore, these materials cannot have been the basis of a bargain between Windsor and Plaintiff Torch, also independently dooming Plaintiff's express warranty claim.

Plaintiff Torch's only allegations regarding express warranties are that the prior owners of the home chose WindsorONE by relying on information that they obtained from a third party contractor who obtained the information from a third party vendor who was not an agent of Windsor.  (FAC. ¶¶ 105-106.)  In vague terms, Plaintiff Torch alleges that the vendor had read some "marketing statements" and relayed this to Halls, who relied on this communication.  *Id.*  This fails to state what affirmation of fact or description of the goods Windsor made.[5]  This is insufficient.  There is no notice given of what the third party vendor read and chose to relay and whether it is was even an accurate relay of information to prior owners of Plaintiff Torch's residence.  Further, the FAC utterly fails to allege what formed the basis of the bargain between Plaintiff Torch and Defendants – because there was no such basis.  Plaintiff Torch's only

---

[5]    Plaintiffs alleges later that nine marketing statements were express warranties for which Windsor should be liable (FAC. ¶ 206) but nowhere in the FAC do they allege that they specifically relied upon any of these statements in making their decisions to buy WindsorONE or buy the home with WindsorONE.

allegation regarding his review of Defendants' marketing materials or warranty is the admission that he didn't review them.  (See FAC ¶ 96.)

As for Plaintiff Gomez, he alleges he relied on a claim from a Parr Lumber representative (not an agent of Defendant) that WindsorONE trim board was the "best trim board product in the business."  (FAC ¶ 142.)   Moreover, the FAC fails to allege what statements or actual documents Plaintiff Gomez relied on upon receiving the "marketing materials and product brochures."  Besides the vague allegation that Plaintiff Gomez used the information he received from Mr. Wilson at Parr Lumber and the representations in the marketing materials and product brochures, no reference is made to any specific statement to give rise to the basis of the bargain between Plaintiff Gomez and Defendants.

In *CHMM, LLC v. Freeman Marine Equipment, Inc.*, No. 3:12-CV-01484-ST, 2013 WL 3025137, at * (D. Or. June 14, 2013), a plaintiff bought a boat from a third party and the third party used a door manufactured by Freeman Marine Equipment on the boat.  Plaintiff then brought suit against Freeman for breach of express warranty when the door malfunctioned.  The court dismissed the claim because there was no allegation that Freeman provided or passed on any warranty documents to plaintiff regarding the door.  *Id.* Nor did the plaintiff allege that the third party provided any express contract warranty to plaintiff with regards to Freeman.   Further, in *CHMM*, the court rejected the argument that general advertising materials of a manufacturer could constitute an express warranty where there was no allegation that Plaintiff ever read or relied upon such materials prior to his purchase.  *CHMM*, LLC, 2013 WL 3025137, at *3.

The facts are even clearer here.  Plaintiff Torch bought a house from a third party years after WindsorONE trim board had been installed on a portion of the house.  (FAC ¶ 113.) Plaintiff Torch makes no allegations that prior to buying this house, anyone provided or passed

on any warranty documents to him.  Instead, Plaintiff Torch admits that he never saw the

warranty.  (FAC ¶ 96.)  As for Plaintiff Gomez, the allegations are merely that he relied on a

general statement from a Parr Lumber representative who is not Defendants' agent and that he

relied upon marketing materials with no reference to the specific statements that formed the basis

of the bargain.  (FAC ¶¶ 142-143.)

      Therefore, Plaintiffs have failed to allege that Windsor's marketing statements or

warranties formed the basis of any bargain – and their breach of express warranty claims should

be dismissed.

### F.      Windsor's Express Warranty Bars Any Implied Warranty Claims And Claims For Consequential Damages

      A valid disclaimer on any express warranty will be effective to waive any warranties that

may be implied by law, if the disclaimer is clearly stated and conspicuous.  O.R.S. § 72.3160.

Here, Windsor's express warranty in effect at the time that the product was bought in 2006 and

2007 clearly includes a bold "Warranty Disclaimer."  (FAC ¶¶ 108, 146.)  The disclaimer states

that "there are no warranties, express or implied, including merchantability, beyond the above

Limited Warranty."  *Id*.  This disclaimer is one paragraph out of only two paragraphs on the

warranty page and cited by Plaintiffs.  *Id*.  It is clear and conspicuous and effective to bar any

claims for implied warranties, including Plaintiffs' Fourth and Fifth claims.  See *Atlas Mut. Ins.*

*Co. v. Moore Dry Kiln Co.*, 38 Or. App. 111, 114 (Ct. App. Or. 1979) (disclaimer squarely in the

middle of a one-page contract and beginning with bold-faced type is conspicuous and effective to

disclaim implied warranties).

G.    **The Breach Of Implied Warranty Claims Are Barred By The Statute Of Limitations**

Even if they were not expressly disclaimed and therefore barred by law, Plaintiffs' Fourth and Fifth Claims under the theory of implied warranties are also barred by a four-year statute of limitations. Section 72.7250 of the Oregon Revised Statutes governs warranty claims. As noted above, the statute requires a plaintiff to bring an action for breach of any warranty within four years of tender of delivery, regardless of whether he has knowledge of the breach. This four year period ran on February 19, 2012 for Plaintiff Torch and November 2010 (or April 2011 at the latest) for Plaintiff Gomez. Consequently, Plaintiffs' implied warranty claims must be dismissed.

The exception for future performance does not apply to implied warranties. By definition, an implied warranty can never qualify as a warranty of future performance. *Sponseller v. Meltebeke*, 280 Or. 361, 365 n.2 (Or. 1997) (noting that an implied warranty cannot quality as a warranty for future performance because it is "neither explicit nor future oriented"); *Hunter v. Woodburn Fertilizer, Inc.*, 208 Or. App. 242, 246 (Ct. App. Or. 2006) ("because the statute requires explicitness, only an express warranty may qualify as a warranty of future performance"); *Permapost Prod. Co.*, 200 Or. App. at 706-707 (the court rejected the argument that an implied warranty that a product was safe for interior use in residential homes could be a warranty of future performance because an implied warranty is not explicit).

Finally, Plaintiffs are not saved by any equitable estoppel doctrine because they have failed allege that Windsor made any false representations to them specifically, that they relied upon, that would have made them forego filing a lawsuit within the four year statute of limitations period. See *supra* § IV.A; *Rose City Paper Box, Inc.*, 827 F. Supp. at 650.

H.    **The Breach Of Implied Warranty Claims Are Barred Because No Privity Exists**

Plaintiffs' Fourth and Fifth claims for breach of implied warranties are also barred because no privity exists between Plaintiffs and Defendants.  In Oregon, a seller's warranty extends to any natural person "who is in the family or household of the buyer or who is a guest in the home of the buyer if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."  O.R.S. § 72.3180.  Plaintiff Torch is not a family member or guest of the Halls, the original owners who purportedly bought WindsorONE trim to be installed on their home.  Under Oregon law, without any privity between Plaintiff Torch and Windsor, Plaintiff Torch may not bring implied warranty claims.  *Simonsen v. Ford Motor Co.*, 169 Or. App. 46 (Or. Ct. App. 2004) (plaintiff who bought used car from another person could not sue manufacturer of car on an implied warranty claim).  Additionally, Plaintiff Gomez alleges that the WindsorONE trim board used on his home was purchased by his contractor Enrique Rodriguez from Parr Lumber and not Windsor.  (FAC ¶ 145.)  As such, under Oregon law, Plaintiff Gomez was also not in privity with Defendants.  *Davis v. Homasote Company*, 281 Or. 383, 386 (Or. 1978) (plaintiff who purchased material through a distributor and not directly from defendant could not bring an implied warranty claim); *Dravo Equipment Co. v. German*, 73 Or. App. 165, 196 (Ct. App. Or. 1985) (recognizing privity is required for implied warranty claims).

I.    **The Limited Warranty Bars Claims For Consequential Damages**

Windsor's express Limited Warranty (in bold) also states that "replacement is the exclusive remedy for breach of warranty, <u>with no consequential or other damages recoverable</u>." (FAC. ¶¶ 108, 146.) (emphasis added).   Because such disclaimer and limitation is clear and conspicuous, it operates to limit Plaintiffs' recovery for consequential damages. O.R.S. § 72.3160; see *Independence Apartments Associates*, 44 F. Supp. 2d at 1122.

**5.**    **CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC in its entirety.  As the FAC's statute of limitations and factual failings cannot be remedied, the dismissal should be with prejudice.

DATED:  November 21, 2017

                    **LEWIS BRISBOIS BISGAARD & SMITH LLP**

                    By: /s/ William E. Pallares
                            **William E. Pallares**, (Admitted *pro hac vice*)
                    633 W. 5th Street, Suite 4000
                    Los Angeles, CA 90071
                    Telephone:   213.250.1800
                    Facsimile:   213.250.7900
                    Email:        William.Pallares@lewisbrisbois.com

                    **LEWIS BRISBOIS BISGAARD & SMITH LLP**
                    **Jennifer K. Oeter**, OSB No. 953728
                    888 SW Fifth Avenue, Suite 900
                    Portland, OR 97204
                    Telephone:   971.712.2800
                    Facsimile:   971.712.2801
                    Email:        Jennifer.Oetter@lewisbrisbois.com

**KAUFHOLD GASKIN LLP**
**Steven S. Kaufhold** (Admitted *pro hac vice*)
**Jonathan B. Gaskin** (Admitted *pro hac vice*)
**Quynh K. Vu** ( Admitted *pro hac vice*)
KAUFHOLD GASKIN LLP
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone:    415-445-4620
Facsimile:    415-874-1071
Email:        SKaufhold@KaufholdGaskin.com
 JGaskin@KaufholdGaskin.com
 QVu@KaufholdGaskin.com
*Attorneys for WINDSOR SURRY COMPANY,*
*WINDSOR WILLITS COMPANY, AND WINDSOR*
*HOLDING COMPANY*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2017, I electronically transmitted the foregoing attached document to the Clerk's office using the Court's CM/ECF System:

/s/ William E. Pallares

William E. Pallares