IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT TORCH and JESUS GOMEZ,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

WINDSOR SURRY COMPANY, d/b/a
WINDSORONE; WINDSOR WILLITS
COMPANY, d/b/a WINDSOR MILL; and
WINDSOR HOLDING COMPANY,

        Defendants.

Case No. 3:17-cv-00918-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    In this putative products liability class action, defendants Windsor Surry Company, Windsor Willits Company, and Windsor Holding Company (collectively "defendants") move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs Robert Torch and Jesus Gomez's amended complaint. Defendants also move to strike all class action allegations and claims. Plaintiffs move to consolidate this action with *Windsor Surry Co. v. Gomez*, Case No. 3:17-cv-01868-SI, which is currently before Judge Simon. For the reasons set forth below,

1 – OPINION AND ORDER

defendants' motion to dismiss is granted in part and denied in part, defendants' motion to strike class allegations is denied, and plaintiffs' motion to consolidate is granted.

## BACKGROUND

This is a products liability case involving allegedly defective wood boards used for external trim on houses and other buildings. The amended complaint alleges five causes of action: (1) strict products liability, (2) negligence, (3) breach of express warranty under Or. Rev. Stat. § 72.3130, (4) breach of implied warranty of merchantability under Or. Rev. Stat. § 72.3140, and (5) breach of implied warranty of fitness for a particular purpose under Or. Rev. Stat. § 72.3150. Plaintiffs seek damages and declaratory relief on behalf of themselves and a putative class of similarly situated individuals.

WindsorONE is a type of trim board used in construction and sold by defendants. Defendants "market[] and sell[] the pre-primed trim board for exterior application[.]" First Am. Compl. ¶ 28. It is made of Radiata Pine. Defendants advertise WindsorONE as suitable trim board for "homes, buildings, and other wood structures." *Id.* ¶ 58. Generally, plaintiffs allege that defendants marketed WindsorONE as a trim board that was free of defects and waterproof.

The timeline in this case is complicated, but crucial. Taking the allegations in the First Amended Complaint as true, the order of events is as follows.

Plaintiff Torch purchased a home in Portland, Oregon from Dan and Kay Hall ("the Halls") in 2011. Several years before plaintiff purchased the property, the Halls, with the help of their contractor, Don Young ("Young"), had added onto the structure of their house and created a garden room. The Halls used WindsorONE trim board in the construction of the garden room. They purchased the trim board at Parr Lumber in Portland on several dates between October 2007 and February 2008.

In "late 2014," Torch noticed "large splits, warping, and . . . fungus . . . growing out of" the WinsdorONE trim board on the outside of the garden room. *Id.* ¶ 114. Torch requested an inspection by Young, and Young subsequently filed a claim through Parr Lumber with defendants' agent, Norcon Consulting Group ("Norcon"), in September 2015. After an investigation and inspection, defendants, through Norcon, denied coverage. Defendants contended that the source of the damage was wood decay and that the products were unprotected by any warranty against that type of damage. However, defendants offered a settlement for "2,004 linear feet of WindorONE+ Protected trim board." *Id.* ¶ 125. Torch rejected that offer.

Plaintiff Gomez built his own home in Bridal Veil, Oregon from May 2006 to April 2007. Gomez's home incorporates WindsorONE wood purchased from Parr Lumber in May 2006. "In approximately March 2014," Gomez noted that the WindsorONE wood "was beginning to show signs of deterioration." *Id.* ¶ 151. Gomez filed a claim similar to the one Young filed on Torch's behalf, and because the source of the damage was wood decay (and thus, in defendants' view, not covered by any applicable warranty), defendants denied coverage.

For the purposes of this litigation, plaintiffs identify September 1, 2014, and March 15, 2014 as the dates of discovery of the wood damage for Torch and Gomez, respectively. Defendants have accepted those estimates for the purposes of the pending motions.

Before filing suit in this court, Torch and Gomez were unnamed class members in a putative class action in the Northern District of California ("California action").[1] Class certification in the California action was denied on July 24, 2017.

---

[1] I take judicial notice of the docket, filings, and orders in *Cover v. Windsor Surry et al.*, No. 14-cv-05262-WHO (N.D. Cal.) pursuant to Federal Rule of Evidence 201(b)(2).

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The district court has discretion when deciding whether to strike a part of a pleading. *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). Courts disfavor striking pleadings, and grant motions to strike infrequently. *Blincoe v. W. States Chiropractic Coll.*, 2007 WL 2071916, No. CV-06-998-PK, *1 (D. Or. July 14, 2007). However, a court may grant a motion to strike when omission of the challenged material would have the "effect of making the trial of the action less complicated" or would result in "streamlining the ultimate resolution of the action[.]" *State of Cal. ex. rel. State Lands Comm'n v. United States*, 512 F. Supp 36, 38 (N.D. Cal. 1981).

## DISCUSSION

Defendants insist that all of plaintiffs' claims are time-barred under Oregon law. Plaintiffs counter that the statutes of limitations do not bar this action, citing the doctrines of equitable estoppel and equitable tolling. Plaintiffs aver that fraudulent concealment both estops

defendant from asserting any statute of limitations defense and equitably tolls the statutes of limitations. Lastly, plaintiffs contend that under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the statutes of limitations were tolled during the pendency of the California action.

Defendants' only argument for dismissing the products liability and negligence claims is that they are time barred. Defendants also challenge plaintiffs' breach of warranty claims on timeliness grounds. But defendants argue in addition that, even if the breach of warranty claims are timely, they fail for various reasons: (1) defendants explicitly disclaimed any implied warranties as well as any express warranties except two, which guarantee the end- and edge-gluing for ten years and the primer for five years; (2) no express warranties were the basis of the bargain between the parties; and (3) there is a lack of privity between the parties. Because the timeliness of each claim is potentially dispositive, I begin by analyzing the parties' statute of limitations dispute. I then proceed to analyze defendants' remaining arguments.

I.    *Statutes of Limitations*

Plaintiffs bring this action in federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1711 *et seq.* "CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010). "[F]ederal courts exercising diversity jurisdiction are to use state statutes of limitation." *Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992). Relatedly "[f]ederal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).

Plaintiffs offer two theories for effectively extending the limitations period for all of their claims. First, they argue that, due to defendants' purportedly fraudulent actions, the statutes of limitations should be equitably tolled or, in the alternative, defendants should be equitably estopped from asserting the statute of limitations defense. Second, plaintiffs contend that, due to the California action, the claims should be tolled under the *American Pipe* doctrine.

A.    *Equitable Estoppel/Equitable Tolling*

Equitable estoppel precludes a person, by virtue of his conduct, from asserting a right that he otherwise would have had. *Day v. Adv. M&D Sales, Inc.,* 86 P.3d 678, 682 (Or. 2004). Equitable estoppel has five elements: (1) there must be a false representation; (2) the representation must have been made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) the representation must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon the representation. *Id.* "For equitable estoppel to apply, the false representation must be one of existing material fact, and not of intention, nor may it be a conclusion from facts or a conclusion of law." *Id.* (internal quotation marks omitted).

The doctrine of equitable estoppel focuses almost exclusively on the actions of the defendant. The Ninth Circuit has held that Oregon courts apply equitable estoppel to bar a statute of limitations defense under only two circumstances: (1) the defendant "lulled the plaintiff, by affirmative inducement, into delaying the filing of a cause of action, or similarly, . . . he lulled the plaintiff into believe he had no cause of action against the defendant[,]" or (2) "there has been fraud on the part of a fiduciary in concealing material facts evincing a cause of action." *Philpott v. A.H. Robbins Co., Inc.*, 710 F.2d 1422, 1425 (9th Cir. 1983). Plaintiffs argue that defendants should be equitably estopped from asserting a statute of limitations defense

because they fraudulently concealed defects in the WindsorONE trim board, thereby delaying plaintiffs' discovery of the harm.

In the alternative, Plaintiffs contend the statute of limitations should be equitably tolled with respect to all of their claims. As the Ninth Circuit has explained, the doctrine of equitable tolling applies "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1193 (9th Cir. 2001) (en banc) (internal quotation marks omitted) (alterations normalized). For example, federal courts have allowed equitable tolling "where the [plaintiff] has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (internal quotation marks omitted). Although "the application of the doctrine of equitable tolling to Oregon's statutes of limitation would not be contrary to Oregon law," *Hubbard v. Progressive Universal Ins.*, 2012 WL 3925057, No. 3:11-cv-1120-ST, *4 (D. Or. Aug. 6, 2012), "Oregon law provides very little precedent for equitable tolling[,]" *V.T. v. City of Medford, Or.*, 2015 WL 300270, No. 1:09-cv-03007-PA, *5 (D. Or. Jan. 22, 2015). Other jurisdictions generally hold that "[t]he predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Millay v. Cam*, 955 P.2d 791, 797 (Wash. 1998). Courts consider prejudice to the defendant and decline to apply equitable tolling in cases where plaintiffs "seek to avoid the consequences of their own negligence." *Simmons v. Methodist Hosps. of Dallas*, 106 F. Supp. 3d 799, 807 (N.D. Tex. 2015) (internal quotation marks omitted).

Plaintiffs offer fraudulent concealment as a justification for equitably tolling their claims and estopping defendants from pleading the statute of limitations defense. "Fraudulent concealment in the pertinent sense involves concealment of the fact that a cause of action has

accrued against the defendant." *Classen v. Arete NW, LLC*, 294 P.3d 520, 526 (Or. Ct. App. 2012) (internal quotation marks omitted); *see also Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008) (explaining that the "actions taken by the defendant to prevent a plaintiff from filing suit" are "sometimes referred to as 'fraudulent concealment'") (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (emphasis omitted)).

Plaintiffs cite *Chaney v. Fields Chevrolet Co.*, 503 P.2d 1239 (Or. 1972) in support of their argument that fraudulent concealment triggers equitable tolling and equitable estoppel in this case. In *Chaney*, the plaintiff purchased a car on credit from the defendant and subsequently returned it. *Chaney*, 503 P.3d at 1239. The return of the car was governed by a contractual provision that, when the car was resold, any surplus beyond the remaining balance on the loan would go to the plaintiff. "[The d]efendant resold the vehicle in 1964 for more than the amount owing on the contract, but concealed [that] fact from plaintiff." *Id.* It wasn't until the next year, in 1965, when the plaintiff discovered he was due the surplus. *Id.* at 1239-40. In 1971, plaintiff sued to recover the money. *Id.* at 1240. Because the suit was brought outside the applicable six-year statute of limitations, plaintiff argued that the statute should be tolled for the year that defendant knew about, and concealed, the surplus owed to plaintiff. *Id.* at 1239-42. Citing an American Law Reports summary, the court explained:

> According to the majority rule . . . fraudulent concealment of a cause of action from the one in whom it resides by the one against whom it lies constitutes an implied exception to the statute of limitations, postponing the commencement of the running of the statute until discovery or reasonable opportunity of discovery of the fact by the owner of the cause of action. Under this rule, one who wrongfully conceals material facts and thereby prevents discovery of his wrong or of the fact that a cause of action has accrued against him is not permitted to assert the statute of limitations as a bar to an action against him[.]

*Id.* at 1241. The court went on to hold that the complaint "allege[d] sufficient facts which, if true, would toll the statute for the length of the time required to permit the bringing of the present

action." *Id.* at 1242. Through this discussion, the *Chaney* court made clear that, with respect to fraudulent concealment, equitable estoppel and equitable tolling are two sides of the same coin; both doctrines turn on whether the defendant, in bad faith, caused the delay in filing the complaint.

The Ninth Circuit has interpreted Oregon case law, specifically citing *Chaney*, to mean that a non-fiduciary's mere concealment of the facts underlying a cause of action is insufficient to trigger equitable estoppel. *Philpott*, 710 F.2d at 1425. Rather, the defendant must affirmatively lull the plaintiff into delaying filing suit or into believing that he has no cause of action. *Id.* In other words, in order to avoid a statute of limitations bar on a theory of fraudulent concealment, "the plaintiff must point to . . . some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky*, 535 F.3d at 1052 (internal quotation marks omitted) (emphasis in original).

Here, plaintiffs have not identified any alleged bad faith apart from the defendants' purported concealment of the defects in WindsorONE trim board. They have not alleged any affirmative actions designed to delay the filing *of this lawsuit*. I hold that, on the facts of this case, there is no fraudulent concealment to justify application of equitable estoppel or equitable tolling. Pleading fraudulent actions does not establish fraudulent concealment for estoppel or tolling purposes. *See id.* ("The primary problem with plaintiffs' argument is that their alleged basis for equitable estoppel is the same as their cause of action."); *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 2014 WL 5285475, No. 3:13-cv-01010-SI, *10 (D. Or. October 15, 2014) ("The mere fact that Plaintiff has adequately pleaded fraud does not import a discovery rule into the statute of limitations for a related breach of warranty claim.").

On March 27, 2018, plaintiffs filed a Notice of Supplemental Authority, submitting an Opinion and Order by Judge McCafferty from the U.S. District Court for the District of New Hampshire ("New Hampshire action").[2] The New Hampshire action is a putative class action against the same defendants and arising out of similar factual allegations. Judge McCafferty found that the plaintiff in the New Hampshire action had sufficiently pleaded fraudulent concealment. That ruling does not change the analysis here for two reasons. First, Judge McCafferty was applying New Hampshire law to the plaintiffs' claims; the doctrine of fraudulent concealment is not identical across all jurisdictions and I am bound to follow the Oregon Supreme Court and the Ninth Circuit in analyzing that doctrine's applicability. Second, the pleadings in the New Hampshire case are distinguishable from the pleadings before me.

The plaintiff in the New Hampshire action specifically alleged that defendants' "warranty-claim process is an artifice" and that defendants "deny warranty claims based on improper installation despite the fact that no method of installation would avoid or cure the inherently defective nature of defendants' design." Pls'. Notice Supp. Auth. Ex. 1 at 7 (internal quotation marks omitted). Judge McCafferty held that whether fraudulent concealment tolled the statute of limitations turned, in part, on "the effect of the allegedly false inspection report" the plaintiff had received. *Id.* at 21. A sham inspection procedure is the sort of affirmative action that could lull a plaintiff into not acting on his rights, as necessary to toll the statute of limitations under the fraudulent concealment doctrine in the Ninth Circuit. Plaintiffs in this case have not alleged that defendants performed a sham inspection here. As such, fraudulent concealment does not aid plaintiffs' in the timeliness of their claims.

---

[2] I take judicial notice of the docket, filings, and orders in *Begley v. Windsor Surry Co. d/b/a Windsor ONE & Windsor Willits Co. d/b/a Windsor Mill*, Case No. 1:17-cv-00317-LM (D.N.H.), pursuant to Federal Rule of Evidence 201(b)(2).

Importantly, even if fraudulent concealment did equitably toll the statute of limitations (or, alternatively stated, equitably estop defendants from asserting a limitations defense) here, it would suspend the running of the limitations period for plaintiffs' claims only through the date on which plaintiffs discovered the defect in the WindsorONE trim board. *See Chaney*, 503 P.2d at 1242. Such tolling would not affect the timeliness of plaintiffs' products liability or negligence claims because the Oregon statutes of limitation for those claims already incorporate a discovery rule—that is, even in the absence of fraudulent concealment, the limitations period runs from the date on which the plaintiff discovered or reasonably should have discovered the defect. *See* Or. Rev. Stat. § 30.905(1) (setting out the discovery rule for products liability claims); *Greene v. Legacy Emanuel Hosp. & Health Care Ctr.*, 60 P.3d 535, 539 (Or. Ct. App. 2002) (setting out the discovery rule for negligence claims).

B.     American Pipe *Tolling*

Plaintiffs cite *American Pipe* and *Resh v. China Agritech, Inc.*, 857 F.3d 994 (9th Cir. 2017), for the proposition that the statutes of limitation were tolled during the pendency of the California action. The *American Pipe* Court held that a putative class action filed in federal court alleging violations of federal law tolls the statute of limitations for individuals who would have been members of the class with respect to their individual claims. *American Pipe*, 414 U.S. at 553. In *Resh*, the Ninth Circuit extended the *American Pipe* rule to toll the statute of limitations with respect to the assertion of *class claims*, thereby permitting "stacked" class action cases. *Resh*, 857 F.3d at 1004. After the briefing on this motion was complete, the Supreme Court reversed the Ninth Circuit's ruling in *Resh*, clarifying that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *China Agritech, Inc. v. Resh*, ___ U.S. ___, ___, 138 S. Ct. 1800, 1806 (2018). The

Court reasoned that "[t]he efficiency and economy of litigation that support tolling of individual claims . . . do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* (internal quotation marks and citation omitted; emphasis in original).

It is important to note that *American Pipe* and *Resh* concerned *same-jurisdictional* tolling, in that they tolled the statutes of limitation for federal claims during the pendency of a class action involving those same federal claims. Application of tolling law in the Ninth Circuit is more nuanced with respect to *cross-jurisdictional* tolling. That type of tolling applies "in a case where a plaintiff s[eeks] to use a class action filed in one jurisdiction to toll an action later filed in another" jurisdiction. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009).

Defendants offer *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) to counter plaintiffs' argument that the California action tolled the statutes of limitations here. In *Clemens*, the plaintiff, Clemens, brought a class action in federal court in California alleging defective head gaskets in Dodge Neon cars. *Clemens*, 534 F.3d at 1021. That lawsuit involved claims under federal law and California law. "In 2001, a nationwide class action concerning Dodge Neon head gaskets [had been] filed in Illinois [state court]. It [wa]s undisputed that Clemens was a member of the nationwide class that the plaintiffs in that case sought to certify." *Id.* at 1025; *see also Clemens v. DaimlerChrysler Corp.*, 2006 WL 5988840, No. CV 05-8484-JFW (CWx), *5 (C.D. Cal. Aug. 31, 2006). The *Clemens* court thus had to decide whether *American Pipe* tolls the statute of limitations for a putative *federal- and state-law* class action filed in *federal court* based on the prior filing of a putative *state-law* class action filed in *state court in another jurisdiction*.

The *Clemens* Court held that "*American Pipe*—which allows tolling within the federal system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure." *Clemens*, 534 F.3d at 1025. The court surveyed state law and concluded that, although cross-jurisdictional tolling is recognized in some states, it is the minority rule. *Id.* Accordingly, the court held that putative class actions based on state law claims toll the statute of limitations for a class claims under the law of a second, different state only when that second state affirmatively allows cross-jurisdictional tolling. *Id.* Because the California courts had not recognized cross-jurisdictional tolling, the court held that the Illinois class action did not toll the California statute of limitations and affirmed the dismissal of the case. *Id.*

Plaintiffs insist that the tolling question here differs slightly from the question in *Clemens* because here, unlike in Clemens, the prior class action was filed in a foreign jurisdiction's *federal* court. While it is true that *Clemens* did not address the precise procedural posture presented here, there are strong similarities between this case and *Clemens*. The present case—like *Clemens*—asks when *American Pipe* tolls the statute of limitations for class claims arising under state law. The only difference between this case and *Clemens* is that, here, the previous class action was brought in federal court instead of in state court.

For present purposes, it does not matter whether the prior nationwide class action was filed in federal court rather than in state court. Federal courts apply state substantive law and federal procedural law to state claims. *In re Cnty. of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015). Statutes of limitation and the tolling questions related to them are questions of substantive law. *Albano*, 634 F.3d at 530. Thus, it is my "task . . . to discern how the Supreme Court of [Oregon] would resolve the limitations and tolling questions before [me]." *Id.* The

question is whether the Oregon Supreme Court would engage in equitable tolling during the pendency of a class action in court in another jurisdiction. The Oregon Supreme Court has applied the *American Pipe* rule on two occasions, both in the context of same-jurisdictional tolling. *See, e.g., Bergquist v. Int'l Realty, Ltd.*, 537 P.2d 553, 562 (Or. 1975) (tolling the statute of limitations where both the class action and the individual claims arose under Oregon law); *Shannon v. Carter*, 579 P.2d 1288, 1290 (Or. 1978) (same for federal law). Plaintiffs have cited no law, and I am aware of none, suggesting that the Oregon courts would apply *American Pipe* tolling differently depending upon whether the prior class action was filed in a foreign federal or state court.

Even if Oregon courts would apply the *American Pipe* rule in the context of cross-jurisdictional tolling, tolling would still not be appropriate here because plaintiffs have filed a subsequent class action, not subsequent individual claims. As mentioned, *China Agritech* held that *American Pipe* does not allow tolling of subsequent class actions. *China Agritech*, ___ U.S. at ___, 138 S. Ct. at 1806.

C.    *Application of Statutes of Limitation to Plaintiffs' Claims*

Having determined that neither equitable tolling/equitable estoppel nor *American Pipe* tolling acts to extend the limitations period in this case, I consider whether any of plaintiffs' claims are nonetheless timely.

1.    *Strict Products Liability and Negligence*

In Oregon,

> a product liability civil action for personal injury property damage must be commenced not later than two years after the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant.

Or. Rev. Stat. § 30.905(1). Similarly, the statute of limitations for negligence actions is two years. *See id.* § 12.110(1) (providing that suits "for any injury to the person or rights of another, not arising on contract . . . shall be commenced within two years[.]"). As noted above, for negligence claims in Oregon, "the period of limitations . . . commences from the earlier of two possible events: (1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed." *Greene*, 60 P.3d at 539 (emphasis in original).

Here, Torch purportedly discovered the wood damage on September 1, 2014, which means the statutes of limitations for the products liability and negligence claims ran on September 1, 2016. The initial complaint in this case was filed June 12, 2017, outside that limitations period. Similarly, Gomez discovered his wood damage on or about March 15, 2014. He was added to the amended complaint on November 7, 2017, outside the limitations deadline of March 15, 2016. Plaintiffs' strict products liability and negligence claims are dismissed for untimeliness.

### 2. *Contract Claims*

Plaintiffs bring three contract claims: (1) Breach of Express Warranty, (2) Breach of Implied Warranty of Merchantability, and (3) Breach of Implied Warranty of Fitness for a Particular Purpose. Under Oregon contract law, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Or. Rev. Stat. § 72.7250(1). Subsections two and four of this statute are also relevant; they state

> (2) . . . A breach of warranty occurs *when tender of delivery is made*, except that where a warranty *explicitly extends to future performance* of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
>
> . . .

(4) This section does not alter the law on tolling of the statute of limitations[.]

*Id.* §§ 72.7250(2), (4) (emphasis added).

### i.  *Breach of Express Warranty*

The respective tender of delivery dates for Torch and Gomez are February 2008 and May 2006.  Because there is no ground for tolling the limitations period, the proper time for filing suit to enforce warranties generally would be 2012 for Torch and 2010 for Gomez.  However, the parties dispute whether any applicable warranty in this case "explicitly extends to future performance," thus creating an exception to the four year statute of limitations.  *Id.* § 72.7250(2).

The statute on express warranties explains

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

. . .

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

*Id.* §§ 72.3130 (1) & (2).  Paragraph 206 of the First Amended Complaint alleges nine representations, from various promotional mediums, that plaintiffs allege constitute express warranties:

- Windsor Mill uses the highest quality materials to produce the highest quality products.

- No special precautions are necessary when working with WindsorONE versus composite trim boards.

- That WindsorONE is superior to wood and should be thought of as "turbo wood."

- Windsor ONE has "all the great qualities of wood, but in addition, it benefits from increased structural stability, decreased cupping, warping, or twisting . . . ."

- WindsorONE "joints are stronger than the wood itself, and waterproof."

- WindsorONE is superior to #2 Pine, Spruce, or Fir, primed or unprimed.

- Redwood and Cedar products "possess no advantage over WindsorONE, and in . . . fact are inferior [to WindsorONE] when it comes to performance."

- "WindsorONE is suitable for all interior and exterior applications."

- WindsorONE provides "durability and long term performance . . . ."

Of those nine marketing statements representations, the parties focus on whether the claim that "WindsorONE provides 'durability and long term performance[,]'" sufficiently guarantees future performance as required by Or. Rev. Stat. § 72.7250(2).

Plaintiffs submit three cases to support their contention that whether this representation is a warranty of future performance is a triable issue of fact. The most on-point case is *Hunter v. Woodburn Fertilizer, Inc.*, 144 P.3d 970 (Or. Ct. App. 2006). In *Hunter*, the court held that the representation that a particular product would be safe to use on "roses that . . . would grow in the spring of 2000" was a guarantee of future performance. *Hunter*, 144 P.3d at 975. Also cited in *Hunter* are plaintiffs' other two cases, *Glen Peck, Ltd. v. Fritsche*, 651 P.2d 414 (Colo. Ct. App. 1981) and *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp 1560 (D. Utah 1994). *Glen Peck* dealt with a breeding contract, where if a bull failed to be a successful breeder, "the matter shall be reported in writing to the seller within six (6) months following the date of purchase or six (6) months after the bull has reached 14 months of age." *Glen Peck*, 651 P.2d at 415. The Oregon

Court of Appeals found this to be a good example of the specificity required for a future performance warranty. *Hunter*, 144 P.3d at 975. The last case guaranteed a contractor's work through a specific point in the future when plaintiff would be released from liability. *Salt Lake*, 855 F. Supp. at 1568. The Oregon Court of Appeals noted that *Salt Lake* involved both a "promise that the goods would perform" and "an explicit reference to the future time when the plaintiff would be released from liability[.]" *Hunter*, 144 P.3d at 975.

With that background of case law in mind, I hold, as a matter of law, that the representation that a product "provides durability and long term performance" is too vague to warrant future performance. The statement does not denote a *specific point in the future* through which the product should be expected to perform. The phrase "long term performance" does not measure up to the level of specificity evidenced in the case law.[3] I agree with defendants that this statement does not have the measurability and objectivity to warrant future performance.

It is undisputed, however, that defendants extend to buyers of WinsdorONE the following two express warranties:

> Windsor Mill guarantees WindsorONE's end and edge-gluing for 10 years and its primer for 5 years. Windsor Mill will replace, without charge, any WindsorONE product that installed according to directions and fails to meet this warranty within that time.

First Am. Compl. 108. Those warranties are for future performance because they specifically guarantee performance through a certain point in the future. However, my reading of the First Amended Complaint shows a lack of sufficient pleading to state a claim for breach of the five-year primer warranty. Certainly, the complaint makes mention of the five-year warranty on

---

[3] Because the "durability and long term performance" statement is too vague to be a warranty of future performance, I need not consider whether defendants' express disclaimer of warranties bars a suit to enforce that marketing statement.

primer, but plaintiffs do not allege that deficient primer caused the damage to the wood. Thus, any claims based on that portion of the warranty will not proceed.

However, a claim for the breach of the ten-year adhesive warranty is sufficiently pleaded. Specifically, plaintiffs allege, "the adhesive used is non-waterproof[,]" is "unsuitable for exterior use[,]" and "breaks down over time [which] allows water to penetrate the untreated and rot susceptible Radiata Pine." First Am. Compl. ¶¶ 79, 82. At this stage, those allegations establish a nexus between the adhesive and damage. If the adhesive is deficient, it is certainly plausible that it would allow water to seep into the wood and cause damage. Accepting plaintiffs' dates of purchase, the ten-year warranty would have ended in February 2018, at the latest, for Torch, and May 2016 for Gomez. Adding the four-year statute of limitations for breach of warranty claims, plaintiffs could file their claims as late as 2022 and 2020, respectively. Therefore, the breach of express warranty claim with respect to failure of the adhesive is timely.

### ii. *Breach of Implied Warranties*

In Oregon, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Or. Rev. Stat. § 72.3140. Because breach of warranty accrues when delivery is tendered, the same temporal restrictions that apply to the express warranty claims apply here. *See* Or. Rev. Stat. § 72.7250(2). Unlike express warranties, however, implied warranties cannot qualify as warranties of future performance. *Hunter*, 144 P.3d at 973. Plaintiffs contend that fraudulent concealment tolls the limitations period, but as discussed above, neither equitable tolling/equitable estoppel nor *American Pipe* tolling applies. The statute of limitations is not tolled and the claim is dismissed as untimely.

The same logic dooms plaintiffs' claims for breach of implied warranty for a particular purpose. Oregon's pertinent statute explains:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

Or. Rev. Stat. § 72.3150. The application of the limitations period here mirrors the previous implied warranty claim with respect to purchase dates, accrual, and purported breach. As such, the claim is dismissed as untimely. [4]

In sum, the only claim to survive defendants' statute of limitations defense is the claim for breach of the express ten-year adhesive warranty.

II. *Remaining Arguments*

Defendants contend that none of the marketing statements or express warranties served as the basis of the bargain. To sustain a breach of express warranty claim, (1) "there must be an affirmation of fact or description of goods by the seller[,]" and (2) "that factual affirmation or description must be the 'basis of the bargain.'" *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092, 1094 (Or. Ct. App. 1994) (quoting Or. Rev. Stat. § 72.3130(1)(a)). "The basis of the bargain requirement . . . does not mean that a description by the Seller must have been bargained for. Instead, the description must go to the essence of the contract." *Autzen v. John C. Taylor Lumber Sales, Inc.*, 572 P.2d 1322, 1326 (Or. 1977). A "seller need only introduce [a description of the product] into the bargaining process" for that description to become a basis of the bargain. *Id.* at 1325.

---

[4] Because the implied warranty claims are untimely, I need not address whether defendants' warranty disclaimer effectively bars any claims for breach of implied warranty.

Defendants argue that plaintiffs have not adequately alleged that they relied on any express warranties in deciding to purchase WinsdorONE trim board. In *Larrison*, when the defendant denied that a warranty was expressed to the plaintiff, the court held that this question "is precisely the sort of conflict in the evidence that plaintiff is entitled to have a jury resolve." *Larrison*, 873 P.2d 1094-95. Indeed, whether an express warranty constitutes the basis of the bargain is a question of fact. Such questions generally cannot be resolved at the pleadings stage. *Otto v. Heckler*, 781 F.2d 754, 758 (9th Cir. 1986). Because it is a question of fact whether the ten-year adhesive warranty went to the essence of the sales contract for the WindsorONE trim board on plaintiffs' homes, basis of the bargain is not a ground to dismiss that claim at the pleadings stage.

Next, the parties disagree as to whether privity of contract is required to sustain a breach of warranty claim and whether each of the named plaintiffs had privity with defendants. In Oregon, privity of contract *is not* required to state a claim for economic losses caused by breach of express warranties. *Kelly v. Olinger Travel Homes, Inc.*, 117 P.3d 282, 287 (Or. Ct. App. 2005). On the other hand, privity of contract *is* necessary to support a claim for breach of warranty when the damages sought are other than pure economic damages (*e.g.*, personal injuries, property damage). *Simonsen v. Ford Motor Co.*, 102 P.3d 710, 721 (Or. Ct. App. 2004).

The term "economic loss" derives from an Oregon tort principle providing that "a plaintiff seeking damages for purely economic losses in negligence [may] do so only on the basis of the breach of a duty other than the ordinary duty to exercise reasonable care to avoid foreseeable harm." *Harris v. Suniga*, 149 P.3d 224, 227 (Or. Ct. App. 2006). That tort-based definition of "economic loss" applies when considering whether privity is required for a breach of warranty claim. *See State ex rel. W. Seed Prod. Corp. v. Campbell*, 442 P.2d 215, 217 (Or.

1968). Property damage generally is not considered a purely economic loss. *See Harris*, 149 P.3d at 227 (Or. Ct. App. 2006). However, in a lawsuit involving a defective product, the cost to repair or replace that product is a pure economic loss. *See Millenkamp v. Davisco Foods Int'l, Inc.*, 391 F. Supp. 2d 872, 878 (D. Idaho 2005) (explaining that, under an Idaho doctrine similar to Oregon's economic loss rule, "cost of repair and replacement of defective property which is the subject of the transaction" is included in "economic loss," while "property damage encompasses damage to property other than that which is the subject of the . . . litigation.").

Because the purportedly defective trim board is the subject of this lawsuit, it is outside what is normally considered "property damage" under the economic loss doctrine. Both named plaintiffs allege at least $30,000 in damages, First Am. Compl. ¶¶ 134 & 168, and, presumably, at least a portion of those damages count as economic loss involving repair and replacement costs. As such, privity is not required for any claims for breach of express warranty.[5] Lack of privity does not bar the plaintiffs' surviving claim for breach of the ten-year adhesive warranty.

III.    *Motion to Strike*

Defendants further move to strike class allegations from the amended complaint. Class actions may be stricken at the pleading stage. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212

---

[5] Privity of contract is always required for breach of implied warranty claims, whether for economic loss or for another type of damages. *Davis v. Homasote Co.*, 574 P.2d 1116, 1117 (Or. 1978); *W. Seed Prod. Corp.*, 442 P.2d at 217. Oregon courts have restricted recovery under an implied warranty theory to injuries suffered by a person within the distributive chain. *See Colvin v. FMC Corp.*, 604 P.2d 157, 161 (Or. Ct. App. 1979) (holding that privity of contract is a prerequisite for a breach of implied warranty claim from a person outside the distributive chain seeking recovery for personal injury).

Torch does not have privity of contract with defendants and is plainly outside the distributive chain. He purchased his house from the Halls, who used WindsorONE to build their addition to the house. He never shopped for, purchased, or installed WindsorONE wood on his house. Even if they were not time-barred, Torch's implied warranty claims would be dismissed for lack of privity.

(9th Cir. 1975). However, motions to strike class allegations are generally disfavored because "a motion for class certification is a more appropriate vehicle" for testing the validity of class claims. *Thorpe v. Abbott Lab., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008). Accordingly, motions to strike class allegations are granted only where "the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). The "'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare'" and has happened only in those limited circumstances when "the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) (quoting *Lyons v. Bank of Am., NA*, 2011 WL 6303390, No. C 11-1232 CW, *7 (N.D. Cal. Dec. 16, 2011)). As the motion to strike is not sufficiently targeted to the remaining claim, the motion is denied at this time.

IV.     *Motion to Consolidate*

Finally, plaintiffs move to consolidate the present case with *Windsor Surry Co. et al., v. Gomez*, Case No. 3:17-cv-01868-SI. In that case, the present defendants instituted an action against Jesus Gomez for breach of contract. The cause of action arises out of Gomez joining the present litigation. Defendants contend that, Gomez breached his oral agreement to accept WindsorONE+ board and settle his warranty claim with defendants when he joined this lawsuit. Gomez disputes that he agreed to settle his claims against defendants.

Defendants brought their breach of contract action in Oregon state court, and Gomez removed to federal court. Plaintiffs promptly filed a motion to consolidate, consideration of which I stayed pending Judge Simon's ruling on defendants' motion to remand for lack of subject matter jurisdiction. Judge Simon denied defendants' motion to remand to state court. Accordingly, I must decide whether the two cases should be consolidated.

Federal Rule of Civil Procedure 42(a) permits consolidation of cases that present a "common question of law or fact" and allows the court to "issue any other orders to avoid unnecessary cost and delay." Fed. R. Civ. Pro. 4(a) & (a)(3). The common questions of fact here are too substantial to be ignored. A primary reason defendants argue that Gomez is an inadequate representative is that settlement and release bars Gomez's claims. The sole claim in the breach of contract action is that Gomez violated that same settlement and release agreement by joining this lawsuit. Consolidating these cases promotes efficiency and eliminates the risk of conflicting decisions.

## CONCLUSION

Defendants' motion to dismiss plaintiffs' amended complaint (doc. 47) is GRANTED in all respects except for the claims regarding breach of the ten-year adhesive warranty. Defendants' motion to strike (doc. 48) is DENIED. Plaintiff's motion to consolidate this action with Case No. 6:17-cv-01868-SI (doc. 51) is GRANTED.

IT IS SO ORDERED.

Dated this _9th_ day of December, 2019.

Ann Aiken
United States District Judge